Hyman SMITH and Lillian Smith, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

Morris SMITH and Esther Smith, Respondents.

Nos. 14330, 14331.

United States Court of Appeals
Seventh Circuit.

April 7, 1964.

Rehearing Denied May 6, 1964.

Herman M. Knoeller, Milwaukee, Wis., Donald A. Schabel, C. Severin Buschmann, Jr., Don A. Tabbert, Indianapolis, Ind., for petitioners, Buschmann, Carr, Schabel & Tabbert, Indianapolis, Ind., of counsel.

Louis F. Oberdorfer, Asst. Atty. Gen., Tax Div., Jonathan S. Cohen, Atty., U. S. Dept. of Justice, Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., for C. I. R.

Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This petition [1] to review a decision of the Tax Court raises the question whether an oral agreement was made by the partners allocating the entire partnership income to Taxpayer for the year 1957, which effectually modified the partnership agreement so as to render the entire distributive net income of the partnership for that year taxable to him. We think the court did not err in deciding the agreement was made.

Morris Smith and Taxpayer are brothers who were equal partners in the operation of the Milwaukee Transformer Company pursuant to an oral partnership agreement made in 1954. In March, 1957, they had a falling-out, and Morris offered to sell his interest to Taxpayer for $100,000 to $125,000. Taxpayer's counter-offer was $75,000 and payment of "your taxes."

Shortly thereafter negotiations for sale of Morris' partnership interest began with attorneys representing the parties. These negotiations extended into July, and on July 1, Morris filed suit in the Circuit Court for Milwaukee County, Wisconsin, for dissolution of the partnership and appointment of a receiver. And Taxpayer and Morris, their sister and attorneys met July 9, and reached an oral agreement.

The effect of this agreement, modifying the original partnership agreement, according to the Tax Court, was that all the distributive net income of the company for the fiscal period [2] November 1,

---

1. Filed by "Taxpayer" Hyman and Lillian Smith who filed a joint return in 1957. Lillian Smith was joined in this action only because of the joint return, and we shall not refer to her hereafter.

2. The partnership fiscal year ran from November 1 to October 31.

1956 to July 12, 1957, would belong to Taxpayer who would also assume any losses, and Morris would have no tax liability. In return Taxpayer would pay Morris $75,000.[3] On July 11 a written contract, anticipated by the previous oral agreement, was entered into, transferring Morris' entire interest in the partnership to Taxpayer and terminating the partnership.

Taxpayer filed a 1957 partnership return showing net income, for the year to July 12, 1957, of $86,137.65, distributed equally between the partners. Morris filed an amended partnership return, with information taken from Taxpayer's return, showing the same profit distributed $78,207.65 to Hyman and $7,930.00 to Morris. In their personal income tax returns for 1957, Taxpayer reported $43,068.83 and Morris reported $7,930.00 as their respective distributive shares of the partnership net income. The Commissioner assessed deficiencies against Taxpayer determining that the entire distributive net income of the Transformer Company, for the period November 1, 1956 to July 12, 1957, was taxable to him.[4]

The Tax Court found that the written contract was not intended to dispose entirely of the question of profit allocation between the partners, but formed only a part of the complete agreement which was both oral and written. It concluded that as a result of the July 9 oral modification of the partnership agreement, under § 761(c) of the Internal Revenue Code,[5] the reallocation of profits related back to the beginning of the fiscal year and that the entire partnership income was taxable to Taxpayer.

The court found that Taxpayer's whole line of conduct "confirms the existence of the oral agreement": Hyman misrepresented the financial condition of the partnership to Morris and his attorneys, and they relied on these misrepresentations, in the absence of statements and records denied them; Taxpayer's agreement to assume the alleged probable losses of the partnership for the period; and Taxpayer's assurances that Morris would have no liability for taxes were reasons for Morris accepting less than earlier statements had shown his share of the capital account of the partnership to be.[6]

█ We think there is substantial evidence to support the Tax Court's finding that at the July 9 meeting an understanding was reached, modifying the original partnership agreement of equal interests. This ultimate fact finding is amply supported by testimony of Morris Smith, in part by Taxpayer, by their sister and by the attorneys. We have no definite and firm conviction that the Tax Court made a mistake. Commissioner v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed. 2d 1218 (1960). And we do not agree with Taxpayer that the subordinate findings of fact are equivocal and inconsistent.

Taxpayer argues that in any event the agreement would be ineffective to change the tax liabilities of the partners, i. e., Morris could not avoid his tax by a retroactive sale of his partnership interest. The argument has no merit.

█ The general rule is that the distributive net income of a partnership

---

3. This amount was reduced in the written agreement to $70,000—"a discount for cash."

4. The Commissioner also assessed a deficiency against Morris and Esther Smith, determining that one-half of the distributive net income of the partnership for the same period was taxable to them. This is the subject of Commissioner's precautionary appeal in No. 14331 which we need not consider in view of our decision in No. 14330.

5. Section 761(c) of the 1954 Internal Revenue Code provides in pertinent part: "For purposes of this subchapter, a partnership agreement includes any modifications of the partnership agreement made prior to * * * the filing of the partnership return for the taxable year * * * which are agreed to by all the partners * * *."

6. The statement of November 1, 1956 showed the value of Morris' share of the capital account to be $92,753.40.

is taxable to the partners,[7] according to the terms of the partnership agreement,[8] whether or not the income is distributed to them. However, § 761(c) of the Internal Revenue Code provides a method for the partners to adjust between themselves their interest in the partnership earnings, provided it is done before the time prescribed for the filing of the partnership return. The effect of such a modification of the partnership agreement is that it relates back to the beginning of the fiscal year in which the modification occurs, for tax purposes, and the partners are then taxable according to their shares of the partnership income as set out in the modified agreement. See 6 Mertens, Law of Federal Taxation, § 35.29 (Supp.1963 at 99).

Taxpayer argues that the legislative history of § 761(c) indicates that modifications of partnership agreements are subject to § 704(b), and that no effect will be given to a modification which was made for the purpose of avoidance or evasion of tax. We agree that a modification cannot be a vehicle to escape tax liability. But there is no evidence that Morris had any intention of avoiding or evading taxes, within the meaning of that section, when the modification of the partnership agreement was made. In fact, at that time he did not know there would be any partnership profits which would be taxable to him, but agreed to the modification under the advice that the partnership would sustain a loss for the fiscal period. We think the Tax Court properly relied on Leff v. Commissioner, 235 F.2d 439 (2d Cir. 1956), to give effect to the retroactive allocation of partnership income.

There is no merit in Taxpayer's contention that, as a matter of law, a partner cannot avoid tax liability by modifying the partnership agreement "as of" the beginning of the tax year. The facts in Teaford v. Commissioner, 246 F.2d 73 (7th Cir. 1957), do not support the contention. There an agreement to "sell"

taxpayer's interest in a partnership was entered into in 1943, but the "sale" was not consummated until 1944. This court there affirmed the Tax Court's decision that taxpayer was taxable on his proportionate share of the 1943 partnership earnings. Other cases cited by Taxpayer to this point are similarly distinguishable.

Nor is there merit in the claim of Taxpayer that the oral agreement of July 9 was in substance a retroactive termination of the partnership as of November 1, 1956, and as such ineffective to modify the original partnership agreement. The partnership, *as a partnership,* continued in actual existence until July 12, 1957. For tax purposes, the agreement amounted to a "modification" of the partnership agreement within the meaning of § 761 (c), and the court properly gave retroactive effect to the agreement.

For the reasons given, the decisions of the Tax Court are affirmed.

---

7. Section 702(a) (9) of the 1954 Internal Revenue Code.

8. Section 704(a) of the 1954 Internal Revenue Code.