OPINION Raum:, Judge: The Commissioner determined that the so-called allocation of all of the 1965 income of the Canon Manor and Westview Meadows partnerships to W. H. Appleton did not relieve the petitioner-partners of their obligation to account for their distributive shares of such income computed in accordance with their percentage interests in those enterprises. Petitioners, on the other hand, contend that the partnership agreements were modified as a result of the decision reached at the December 2, 1965, meeting of the “Board of Governors of the W. H. Appleton Developments,” and that, as thus modified, their distributive share of income was zero for 1965. We hold that the Commissioner’s determination must be sustained for either of at least two reasons. 1. Section 702(a), I.R.C. 1954, requires a partner to take into account his distributive share of partnership income in determining his personal income tax. Section 704(a) provides that a partner’s distributive share of partnership income is determined, except as otherwise provided by section 704, by the partnership agreement. Section 761(c)[2] states that the partnership agreement “includes any modifications of the partnership agreement” made in accordance with specified conditions. Such modifications relate back to the beginning of the partnership year. See David A. Foxman, 41 T.C. 535, 554, affirmed 352 F. 2d 466 (C.A. 3). The partnership agreement, as well as any modifications thereto may be oral or written. Income Tax Regs., sec. 1.761-1 (c). During the year in issue, and at all other relevant times, Canon Manor and Westview Meadows operated under oral agreements. Prior to 1965 the distributive shares of the ordinary income of Canon Manor and Westview Meadows were allocated to the partners in accordance with their percentage interests in the partnerships. Since the allocation of all the partnerships’ 1965 income to Appleton purported to change this arrangement, such allocation was in effect a modification of the partnership agreements and therefore was required to satisfy the conditions of section 761(c), namely, that the modification be agreed to “by all the partners” prior to or at the time prescribed by law for the filing of the partnership return, or that it be “adopted in such other manner as may be provided by the partnership agreement.” The burden of proof is, of course, upon petitioners, and, in our judgment, petitioners have failed to prove that there was a modification that complied with either of these conditions. (a) The record is particularly unsatisfactory in respect of the required agreement of all the partners to the reallocation of income to Appleton. To be sure, there is evidence that the partners were to be notified that the board had voted on such reallocation at its December 2, 1965, meeting, that the partners were to have the opportunity to indicate their disapproval thereof by December 15, 1965, and that the minutes contained the following parenthetical statement: “(No one phoned Marjorie Avellar before December 15, 1965, as agreed.)” But we had no confidence whatever in the inferences that petitioners would have us draw from such evidence. The affairs of the partnerships appear to have been conducted in a very loose manner. The minutes were crudely written, Marjorie Avellar was not a witness before us (nor does it appear that any effort was made to take her deposition), and the testimony that we did hear left us with too many troubling doubts. We had no convincing evidence that all the partners were actually sent notifications of the board’s action, and there was persuasive affirmative evidence that at least one of the partners, Donald P. Donahue, not only failed to receive any such notification but that he learned for the first time in December 1966 of the board’s December 2, 1965, meeting. While it is true that Donahue was told by Mayer, Appleton’s accountant, on some unspecified day in April 1966 that he would not be required to report any share of the partnership’s 1965 income, the precise nature of what he was told, on what day he was told (whether before or after April 15),[3] and whether he in fact agreed to the reallocation of income to Appleton or merely proceeded upon the assumption that it was a fait accompli— these are matters in respect of which the record is either murky or uninformative. Moreover, no solid evidence was presented in respect of the necessary agreement by the other partners. Taking into account the fact that the burden was on the petitioners, we cannot find on this state of the record that the first condition of section 761(c) has been satisfied. (b) Nor can we find, as urged by petitioners, that the modifications of the partnership agreements were “adopted in such other manner as may be provided by the partnership agreement[s].” In essence, it is the petitioners’ contention that the modifications were adopted by the board of governors, and that the partnership agreements gave the board authority to make such modifications. Again, taking into account the fact that the burden of proof was upon the petitioners, we cannot make any such finding on this record. The partnership agreements themselves were oral and the record is singularly uninformative as to the nature or content of those agreements. Appleton, who was probably better informed than anyone else as to the nature of the oral agreements, was not called as a witness, nor was there any other evidence of substance that established the extent of the ahthority of the board (in particular, whether it had authority to modify the distributive shares of partnership income), or whether such “authority” as it may have had stemmed from the partnership agreements rather than from Appleton himself, who appeared to dominate the affairs of these enterprises. The evidence before us was loose and vague. Certainly, we cannot assume that the necessary clarifying evidence which petitioners did not present would have been in their favor; the burden was upon them and they must bear the consequences. Cf. Samuel Pollack, 47 T.C. 92, 108, affirmed 392 F. 2d 409 (C.A. 5). On this state of the record we hold that petitioners have failed to establish that the alleged modifications were adopted in a manner “provided by the partnership agreements].” 2. Wholly apart from the failure of petitioners to prove that there was compliance with the conditions of section 761(c), the record further fails to establish that there was in fact any bona fide modification of the partnership agreements which actually changed the distributive shares of the partners. It is quite true, as petitioners contend, that partners may readjust their respective partnership shares of income and that, apart from the provisions of section 704(b) (2),[4] effect will be given to the partners’ agreement and their modifications thereof.[5] See David A. Foxman, 41 T.C. at 554. Moreover, while one of the purposes of the statute was to provide flexibility to a certain extent (e.g., in respect of payments for goodwill) that would enable the partners to shift their tax burdens inter sese, cf. David A. Foxmam,, supra; Commissioner v. Jackson Investment Co., 846 F. 2d 187 (C.A. 9), reversing 41 T.C. 675, the modifications contemplated must at least be bona fide. Thus, although the partners are to be permitted to readjust their distributive shares inter sese, such readjustments must be real, and we are therefore faced with the threshold question on this issue as to whether there was any genuine readjustment of the partners’ distributive shares. In our view of the record the evidence indicates the contrary and certainly does not establish that there was any such bona fide reallocation. As we appraise the evidence, the purported reallocation of income to Appleton did not in reality shift the 1965 income from the other partners to him. Under the arrangement it appears that at the very least the so-called allocation was made on the understanding that Appleton would restore to the other partners in later years the amounts allocated to him in 1965. Thus, to the extent that the partnerships had income in the years following 1965 Appleton yielded either all or the major portion of such income to the other partners, and to the extent that a net loss was sustained in any year Appleton absorbed it in its entirety. Presumably, this course of action was to continue until the entire amounts of the so-called allocations of 1965 income were restored to the other partners. The record does not disclose the full nature of Appleton’s undertaking in this respect — e.g., whether Appleton personally guaranteed that the amounts allocated to him would be restored to the other partners regardless of the success or failure of the enterprises. It would seem at least doubtful whether all of the other partners would have agreed to give up their 1965 income without any such undertaking by Appleton. But here again, the vagueness of the record and the failure to present a clear picture of what in fact occurred leaves us with the definite impression that the 1965 transaction may have amounted to little more than something in the nature of a loan to Appleton which was to be repaid in later years. Indeed, it may even have been something less than a loan, for the actual cash withdrawals by Appleton were far less than the amount of distributive income allocated to him. Thus, on this issue as well, the fact that petitioners did not produce Appleton as a witness at the trial to clarify the situation and thereby left much to conjecture is hardly a circumstance that can operate in their favor when it is kept in mind that the burden of proof was upon them. We cannot find that the so-called allocation of 1965 income to Appleton was in fact anything more than a paper transaction having no consequences of substance, and did not represent a true modification or readjustment of the partners’ distributive shares of income. What was said by the Supreme Court in a somewhat different context is equally applicable here (Commissioner v. Court Holding Co., 324 U.S. 331, 334) : To permit tlie true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress. We hold that petitioners have failed to prove that there was a bona fide modification of the partnership agreements which in fact readjusted the distributive shares of partnership income. Decisions will be entered for the resfondent. [2] SEC. 761. TERMS DEFINED. (c) Partnership Agreement. — For purposes of this subchapter, a partnership agreement includes any modifications of the partnership agreement made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year (not including extensions) which are agreed to by all the partners, or which are adopted in such other manner as may be provided by tile partnership agreement. We are of course aware that Donahue’s conversation occurred with respect to the filing of his return, and that income tax returns are ordinarily required to be filed on Apr. IS. However, we are also aware that extensions for filing are not uncommon and that late filings are by no means rare. And since the record before us is characterized by considerable vagueness, we are not willing in this case to make the inference that Donahue’s conversation with Mayer took place on or before Apr. 15 in the absence of more concrete evidence. SEC. 704. PARTNER’S DISTRIBUTIVE SHARE. (b) Distributive Share Determined bx Income or Loss Ratio. — A partner’s distributive share of any item of income, gain, loss, deduction, or credit shall be determined in accordance with his distributive share of taxable income or loss of the partnership, as described in section 702(a) (9), for the taxable year, if — (1) the partnership agreement does not provide as to the partner’s distributive share of such item, or (2) the principal purpose of any provision in the partnership agreement with respect to the partner’s distributive share of such item is the avoidance or evasion of any tax imposed by this subtitle. We do not Rere pass upon the Government’s argument that see. 704(b) (2) is fatal to the petitioners’ position in this case. While we are fully prepared to accept the contention that the principal purpose of the alleged modifications was the “avoidance or evasion’’ of tax on Appleton within the meaning of sec. 704(b)i(2), we are faced with the petitioners’ troublesome argument that sec. 704(b)(2) applies only to “items” of Income, etc., dealt with in pars. (1) through (8) of sec. 702(a) and does not govern par. (9) relating ito the composite of all of the partnership’s income (sometimes referred to as its “ordinary income”) which is here involved. The point is not without difficulty. Although there is general language in Smith v. Commissioner, 331 F. 2d 298, 301 (C.A. 7), in accord with the Government’s argument, the structure of the statute itself and language in the legislative history would seem to give support to petitioners’ position. See S. Kept. No. 1622, 83d Cong., 2d Sess., p. 379. However, in view of our conclusion that there was not in fact a bona fide reallocation of income among the partners, we do not reach the question whether sec. 704(b) (2) is applicable to sec. 702(a) (9).