Ronald ATLAS and Ellen Atlas,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 80 C 2957.

United States District Court,
N.D. Illinois, E.D.

Dec. 23, 1982.

Larry D. Blust, Jenner & Block, Chicago, Ill., for plaintiffs.

Seth G. Heald, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

### WILLIAM T. HART, District Judge.

This is a civil tax refund action pursuant to 28 U.S.C. § 1346(a)(1). The matter is currently before the Court on the United States' ("defendant") motion for partial summary judgment. The plaintiff[1] Ronald Atlas ("Atlas") is one of 21 limited partners in an Illinois limited partnership, Fostman Venture No. 4 ("Fostman 4"). Sometime in 1975, Fostman 4 became, in exchange for a capital contribution of $650,000.00, a limited partner in an Oklahoma limited partnership Villa Fontana Associates ("Villa Fontana"). Villa Fontana's sole asset is a Tulsa apartment complex, Villa Fontana Apartments. Pursuant to written agreement, 99 percent of Villa Fontana's losses were to be allocated to Fostman 4 in 1975. Villa Fontana claimed 1975 losses in the amount of $1,592,484.00. On his 1975 tax return, Atlas claimed $19,984.00 as his percentage share of that loss. Most of Atlas' claim was disallowed by the Internal Revenue Service.

1. *Ellen* Atlas also is named as a plaintiff because she filed a joint tax return with her husband. She is not a limited partner in Fostman 4.

2. Three general sources for the disallowance are noted by the IRS: (1) certain deductions claimed by Villa Fontana on its 1975 partnership tax return; (2) the retroactive allocation to Fostman 4 of 99 percent of Villa Fontana's pre-December 30, 1975 losses; and (3) certain deductions claimed by Fostman 4 on its 1975 partnership tax return. These disallowances, in turn, affected the amounts of the partnership

The defendant argues that the primary reason[2] for the disallowance to Atlas is that Fostman 4 did not become a limited partner until December 30, 1975. It asserts that for tax purposes a partnership is created only when capital and services have been contributed with the intent to create a partnership and where the requirements of state law have been met. Neither capital nor services were contributed by Fostman 4 to Villa Fontana before December 30. Also several prerequisites to closing the transaction, including statutorily required filings, were not accomplished until that day.

The defendant further states that the "varying interest" rule provided for in section 706(c)(2) of the Internal Revenue Code of 1954 (26 U.S.C.) ("Code")[3] prevents the retroactive allocation of losses to persons not partners when the losses occurred. In the alternative, the defendant claims that the federal policy prohibiting the assignment of unearned income or losses prevents Atlas from claiming more than his percentage share of the losses incurred *before* December 30, 1975. Accordingly, the defendant requests the Court to determine:

(1) That the partnership of Fostman Venture No. 4, for federal income tax purposes, was not entitled to a retroactive allocation of 99% of the net loss of the partnership of Villa Fontana Associates for the period from January 1, 1975 until the date in 1975 on which Fostman Venture No. 4 became a partner in Villa Fontana Associates.

(2) That Fostman Venture No. 4 was not a partner in Villa Fontana Associates prior to December 30, 1975.

losses claimed by Atlas and the other partners of Fostman 4 on their individual 1975 tax returns. The other partners have cases pending in the United States Tax Court in which they raise the same issues raised by Atlas in the instant case. The defendant's pending motion for partial summary judgment addresses only the second of the three general sources of disallowance.

3. Unless otherwise indicated, all codal citations are to the Internal Revenue Code in effect in 1975.

Atlas raises a number of arguments in opposition. First, he claims that the 1975 tax laws permitted losses incurred from the first day of the relevant tax year to be allocated to new partners admitted up to and including the last day of the partnership's tax year. Atlas alleges that he may claim, pursuant to section 704(a) of the Code, whatever portion of gain or loss is specified in the partnership agreement. Under this view, the exact day in 1975 when Fostman 4 became a limited partner in Villa Fontana is irrelevant. In the alternative, Atlas claims that Fostman 4 became a limited partner at least by December 1, 1975 and that he is entitled to claim his distributive share of 100 percent[4] of the losses suffered by Villa Fontana from December 1 until the end of December, 1975.

Second, Atlas argues that the Court cannot grant summary judgment on the issue of when Fostman 4 became a limited partner in Villa Fontana because facts material to the determination are in dispute. *See* Fed.R.Civ.P. 56(c). He says that for purposes of federal taxation the creation of a partnership is determined from the intent of the parties—not, as the government says, from the contribution of capital and services or from compliance with a state's partnership law. Atlas also claims that when intent is at issue, summary judgment is an improper remedy. *See, e.g., Staren v. American National Bank and Trust Co. of Chicago,* 529 F.2d 1257 (7th Cir.1976); *Cedillo v. International Association of Bridge and Structural Iron Workers,* 603 F.2d 7 (7th Cir.1979). Atlas submits the affidavit of Jerald F. Richman, a general partner of Fostman and Associates, indicating Richman's intent to become a limited partner in Villa Fontana as of November 29, 1975 and to form Fostman 4 on the same day.

Finally, Atlas argues that partial summary judgment is not permitted where fewer than all parts of a single claim are presented for disposition. Atlas claims that he is entitled to either a share of 99 percent of all the losses incurred by Villa Fontana in 1975 or 100 percent of the losses incurred from December 1 through December 31, 1975. The defendant allegedly seeks summary judgment only as to part of this claim—whether retroactive allocation of 99 percent of the losses is lawful irrespective of the date on which Fostman 4 became a limited partner of Villa Fontana. Thus the portion of Atlas' claim which proposes that he may deduct his share of 100 percent of the December 1975 losses allegedly has not been presented for disposition.[5]

The disposition of this motion requires a determination of exactly when Fostman 4 became a limited partner of Villa Fontana. As of November 27, 1982, neither limited partnership, Fostman 4 nor Villa Fontana, was in existence. On November 28, 1975, Fostman and Associates, the general partner of Fostman 4, executed a Memorandum of Agreement with the general partner of Villa Fontana. The Memorandum's purpose was to set the ground rules for acquisition of a limited partnership interest in the Villa Fontana Apartments. Fostman 4 was to be formed by Fostman and Associates and designated as its assignee in a limited partnership to be formed and known as Villa Fontana Associates. The Memorandum also specified that a portion of Fostman 4's capital contribution would be used to fund Villa Fontana's 1975 cash requirements, including some obligations incurred by Villa Fontana prior to December 1, 1975. Closing of the transaction was to occur "no

---

4. The Court is unclear as to why 100 percent of the losses would be allocated to Fostman 4 for this period since the partnership agreement specified that Fostman 4 would receive 99 percent of any losses in 1975.

5. Because the Court finds that Fostman 4 did not become a limited partner in Villa Fontana until December 30, 1975, *see infra,* Atlas' alternative argument, that he is entitled to 100 percent of losses incurred from December 1, 1975

onward, is, in effect, raised *sua sponte* and determined against him. If Fostman 4 did not exist before December 30, it could not have joined Villa Fontana on December 1. Thus, it is unnecessary to decide whether Atlas' view of the limits of partial summary judgment is correct, *i.e.,* whether or under what conditions Fed.R.Civ.P. 56(d) is appropriate for disposition of one part of a single claim. All parts of Atlas' single claim are disposed of.

later than December 12, 1975." The closing was contingent on, among other things, the preparation of a limited partnership agreement, the filing of a certificate of limited partnership, financial, profit and loss and cash flow statements and evidence that the general partner of Villa Fontana was a person of general substance.

On December 28, 1975, Atlas executed a Fostman 4 subscription agreement, having tendered an application to be a limited partner six days before. On December 30, 1975, the Agreement of Limited Partnership and Certificate for Fostman 4 were executed and filed in Illinois. Also on December 30, Fostman 4 paid Villa Fontana the sum of $650,000.00. Finally, on December 31, 1975, a Limited Partnership Agreement and Certificate on behalf of Villa Fontana was filed in Oklahoma.

## DISCUSSION

The Court first concludes that, as a matter of law, Fostman 4 did not become for federal tax purposes a limited partner in Villa Fontana until December 30, 1975. For federal tax purposes, the standards governing the existence of a partnership are federal. *Evans v. Commissioner,* 447 F.2d 547 (7th Cir.1971); Internal Revenue Code § 7701; Treasury Regulations on Procedure § 301.7701–1. Thus, in one respect Atlas is correct, *i.e.,* whether the would-be partners complied with the specificity of Oklahoma's or Illinois' partnership laws by executing partnership agreements and certificates before doing business is irrelevant to the determination of when Fostman 4 was created for federal taxation.

Turning to the federal regulations, section 704(e)(1) provides that "[a] person shall be recognized as a partner . . . if he owns a capital interest in a partnership in which capital is a material income producing factor." Although section 704(e) applies to family partnerships, its scope encompasses all partnerships for purposes of tax law. *Evans v. Commissioner, supra,* at 550.

The controlling law on the formation of partnerships is *Commissioner v. Culbertson,* 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949). There the Court considered the question "whether an intention to contribute capital or services sometime in the future is sufficient to satisfy ordinary concepts of partnership" as required by federal law. *Id.* at 738–39, 69 S.Ct. at 1212. The Court concluded that

[A] partnership is, in other words, an organization for the production of income to which each partner contributes one or both of the ingredients of income—capital or services. The intent to provide money, goods, labor, or skill sometime in the future cannot meet the demands . . . of the code that he who presently earns the income through his own labor and skill and the utilization of his own capital be taxed therefor. The vagaries of human experience preclude reliance upon even good faith intent as to future conduct as a basis for the present taxation of income.

(Citations omitted).

Atlas argues that *Culbertson* does not hold that the existence of a partnership turns first on the contribution of either capital or services. Rather he says that contributions of capital or services are but factors to be considered. In his view, regardless of a person's contribution of either capital or services, the primary resolution of whether a partnership is created turns on the partners' intention to form a partnership. Atlas misreads *Culbertson.*

The *Culbertson* case, and all but one of the cases cited by Atlas, deal with family partnerships. A close reading of those cases indicates that there was always an allegation of *some* contribution of capital or services by the purported partner/family member. The issue was whether the amount, quality or origin of the capital or services was sufficient to indicate an intent to establish a partnership. This is because family partnerships, unlike the instant arm's length transaction, were attacked as "created" only to evade the payment of taxes. Thus, the statement in *Culbertson:* "[e]ven though it was admitted in the

[*Commissioner v.*] *Tower* [327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670 (1946)] case that the wife contributed no *original* capital ... or services, this Court did not say as a matter of law that there was no valid partnership." (Emphasis added). The Court was saying that where no *original* capital is contributed, as where the donee of an intrafamily gift seeks to become a partner through investment of the gift in the family partnership, the true intentions of the parties must be scrutinized to determine if the goal is merely tax avoidance rather than operation of a "real" partnership. But the *Culbertson* case clearly establishes that there first must be some contribution of capital or services before a person can be taxed as a partner. Then if his intentions are in doubt, the case merits a further look.

Despite the passage of 33 years, *Culbertson* is still good law. *Evans v. Commissioner, supra,* at 550–51; *Pflugradt v. U.S.,* 310 F.2d 412, 415 (7th Cir.1962). This is so although the Code's present section 704(e)(1) replaced the "good-faith/business purpose" test in force in 1949 with the "ownership of a capital interest" test. On December 30, 1975, Fostman 4 contributed capital to Villa Fontana. There is no allegation that it ever contributed services. Thus Fostman 4 owned no capital interest in Villa Fontana until December 30, 1975. In fact, Fostman 4 was not even created until that date. The good faith intentions of the affiant Jerold Richman to become a limited partner of Villa Fontana on December 1 is immaterial. Arguably, Fostman and Associates was not even bound by the Memorandum of Agreement to contribute capital or to form Fostman 4 since the agreement recites that if all contingencies were not satisfied [before December 12, 1975], the agreement would expire and each party would hold the other harmless. Thus, no genuine issue of fact material to deciding when Fostman 4 became a limited partner of Villa Fontana remains since, as a matter of law, Fostman 4 did not become a limited partner until December 30, 1975.

■ Second, the Court finds that the Code does not permit any portion of the losses incurred by Villa Fontana prior to December 30, 1975 to be retroactively allocated to Fostman 4 or deducted by Atlas on his 1975 return. Subchapter K of the Code, §§ 701 *et seq.,* controls the taxation of partnership income. Individual partners, not the partnership, pay tax on partnership income or deduct its losses according to their distributive share of income or loss. Where a partnership agreement is in effect, that agreement generally governs allocation of a partner's distributive share. Code § 704(a).

There are, however, several exceptions. Only one—the varying interest rule—is relevant here. In 1975, section 706(c)(2)(B) provided that when a partner "sells or exchanges less than his entire interest in the partnership or with respect to a partner whose interest is reduced ... [his distributive share of partnership losses] shall be determined by taking into account his varying interests in the partnership during the taxable year." This section has been consistently interpreted to prohibit the arrangement that Atlas seeks to validate here. *Williams v. U.S.,* 680 F.2d 382 (5th Cir.1982); *Snell v. U.S.,* 680 F.2d 545 (8th Cir.1982), *Mahoney v. U.S.,* No. 497–77 (Ct.Cl. Nov. 6, 1981); *Rodman v. Commissioner,* 542 F.2d 845 (2d Cir.1976); *Richardson v. Commissioner,* 76 T.C. 512 (1981); *Marriott v. Commissioner,* 73 T.C. 1129 (1980); *Moore v. Commissioner,* 70 T.C. 1024 (1978).

*Moore v. Commissioner, supra,* at 1032, held that the distributive share of a partner who is a transferee of less than the entire interest of the transferor partner is determined in the identical way as that of the transferor partner's distributive share. Losses incurred by a partnership before partnership interests are altered, *e.g.,* reduced, are deductible by the transferor according to his *then* existing partnership interest. Losses incurred after a shift in partnership interest are deductible by the transferor and transferee in accordance with their newly created interests in the partnership. Atlas has not directed the Court to any case that, based on the preced-

ing interpretation of section 706(c)(2)(B), has held that a member of a partnership for only a part of the tax year can deduct losses incurred for the other part. Since the statute would prevent an original partner from sharing disproportionately in the partnership's losses after admission of a new partner, the statute similarly bars a new partner from sharing disproportionately in losses which accrued prior to his admission.

The varying interest rule is consistent with the long standing ban against the assignment of unearned income or losses. *See Helvering v. Horst,* 311 U.S. 112, 116, 61 S.Ct. 144, 146, 85 L.Ed. 75 (1940); *Lucas v. Earl,* 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731 (1930); *Williams v. U.S., supra. Moore v. Commissioner, supra.* Accordingly, the courts "have recognized that partnership agreements allocating to a new partner a portion of partnership profit or losses attributable to the period prior to the partner's entry into the partnership violate the assignment of income doctrine." *Williams v. U.S., supra,* at 385, and the cases cited therein. This Court is persuaded to make an identical finding.

Nonetheless, Atlas argues that many of the cited cases are either factually distinguishable or are legally insupportable. He states that section 706(c)(2)(B) is inapplicable to a situation where, as here, a new partner obtains his interest by making a capital investment instead of by purchasing existing shares. *Cf. Marriott v. Commission, supra,* and *Moore v. Commissioner, supra.* Atlas argues that the word "reduced" in the 1975 version of section 706(c)(2)(B) did not apply to him because by adding capital to Villa Fontana, the partnership's assets were increased. Thus, he says, the old partners' percentage shares, despite additional interested partners, were somehow not reduced. This so-called "size of the pie" theory is illogical. The Court can find no decision in which the theory was accepted. The 1982 decisions of the Fifth, *Williams v. U.S., supra,* and Eighth, *Snell v. U.S., supra,* Circuits also reject the theory Atlas advances here. Furthermore, the leading commentator on partnership taxation rejects the proposition that no re-duction of the interests of the existing partners occurs where the pie is increased sufficiently to offset a reduction in proportionate interest. A. Willis, Partnership Taxation 286 (2d ed.1976). Thus, to the extent that Atlas seeks to distinguish this case from the cases where an interest is purchased outright rather than gotten by capital contribution, he poses a distinction without a difference.

Atlas tries to make his argument credible by comparing the 1975 version of section 706(c)(2)(B) with its 1976 counterpart. The Tax Reform Act of 1976 amended that section and inserted after the phrase "a partner whose interest is reduced" the parenthetical phrase "(whether by entry of a new partner, partial liquidation of a partner's interest, gift or otherwise)." Both parties agree that the 1976 amendment clearly prohibits retroactive allocation of losses to a person in advance of his status of partner, whether a partnership occurred by capital contribution or outright sale. Atlas, however, argues that the absence in 1975 of the parenthetical addition means that retroactive allocation for new partners joined by capital contributions was permitted in 1975.

A review of the legislative history and interpretative case law is to the contrary. The purpose of the amendment appears to be to clarify the law as it existed, and not to change it. The Report of the Joint Committee on Taxation recognized as ambiguous the pre-1976 law:

> Under prior law, it was unclear whether ... [§ 706(c)(2)(B) ] pertained to the situation where a partner's proportionate interest in the partnership was reduced as the result of the purchase of an interest directly from the partnership. Consequently, it was unclear whether an incoming partner, who purchased his interest directly from the partnership, would be subject to the rule of including partnership income and loss according to his varying interests during the years.

Staff of Joint Commission on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, p. 92

(Comm.Print 1976). Therefore, the purpose of the 1976 amendment was—

> to make it clear that the varying interests rule of this provision is to apply to any partner whose interest in a partnership is reduced, whether by entry of a new partner who purchased his interest directly from the partnership, partial liquidation of a partner's interest, gift, or otherwise. Correspondingly, the provision is to apply to the incoming partner so as to take into account his varying interests during the year. In addition, regulations are to apply the same alternative methods of computing allocations of income and loss to situations falling under section 706(c)(2)(B) as those now applicable to section 706(c)(2)(A) situations (sale or liquidation of an entire interest).

Id., at pp. 93–94. Accord Williams v. U.S., supra; Richardson v. Commissioner. Thus, the varying interest rule in effect in 1975 prohibited Atlas from deducting any percentage of losses incurred by Villa Fontana prior to December 30, 1975, notwithstanding the terms of the agreement between the parties.

Atlas' insistence that this case is governed by Smith v. Commissioner, 331 F.2d 298 (7th Cir.1964), also is to no avail. In Smith, the Seventh Circuit upheld an agreement providing that one partner was to be allocated 100 percent of the partnership's tax year gain. Unlike the instant case, however, Smith involved a reallocation of income among members of an ongoing partnership. Each member had been a partner for the entire tax year. Furthermore, the Smith case did not even discuss the varying interest rule but focused only on whether the partnership agreement was an attempt to evade the payment of taxes. Smith is not controlling here.

The Court recognizes that summary judgment is a drastic remedy and that it should not be granted without excellent reasons or where intent is critical to ascertain. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1967). At a minimum, it must be established that "no genuine issue as to any material fact"

remains for trial. Fed.R.Civ.P. 56(c). However, as no fact material to this motion can be disputed as a matter of law, no genuine issue as to any material fact remains: Retroactive allocation to incoming partners of preexisting partnership losses is forbidden and, notwithstanding the good faith intentions of its originators, Fostman 4 was not formed for federal tax purposes until December 30, 1975.

Accordingly, the defendant's motion for partial summary judgment is granted. The issues of whether the IRS properly disallowed 1) certain deductions claimed by Villa Fontana Associates on its 1975 partnership tax return and 2) certain deductions claimed by Fostman 4 on its 1975 partnership tax return, disallowances which, in turn, reduced the amount of partnership losses ultimately claimable by Atlas, remain for trial. A status hearing to set a date for the submission of a pretrial order will be held on January 19, 1983 at 9:30 a.m.