LORNE A. JOHNSTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnston v. Commissioner
Docket No. 110-82.
United States Tax Court
T.C. Memo 1984-374; 1984 Tax Ct. Memo LEXIS 298; 48 T.C.M. (CCH) 553; T.C.M. (RIA) 84374; July 23, 1984. Joseph V. Sliskovich, for the petitioner. Darren M. Larsen, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7456(c), [1] and General Order No. 8 of this Court, 81 T.C. XXIII (1983). After review of the record, we agree with and adopt his opinion set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Special Trial Judge: Respondent determined a deficiency in petitioner's 1977 Federal income tax in the amount of $4,026.09 and an addition to tax under section *300 6651(a)(1) in the amount of $1,006.52. The issues for decision are (1) Whether a partnership agreement was modified so as to reduce the distributive share of partnership income to be allocated to petitioner; and (2) whether petitioner's failure to timely file his Federal income tax return was due to reasonable cause under section 6651(a)(1). Some of the facts in this case have been stipulated and are so found.The stipulation of facts and attached exhibits are incorporated herein by this reference. The petitioner resided in Goleta, California, at the time the petition herein was filed. I. Partnership Income.
In 1973, petitioner and two other individuals formed the Oxnard Drywall Supply partnership. Petitioner's partners were William Rogers and Larry Rogers, father and son, respectively. Petitioner was responsible for sales, yard operations, dispatching, and truck driving. Larry Rogers managed the financial affairs of the business. Each of the three partners shared equally in the profits and losses of the partnership. From 1973 until sometime in 1977 the partners had an oral partnership agreement. In the fall of 1977, petitioner signed a written partnership agreement *301 dated January 1, 1977. Paragraph 19(c) of the agreement gives any two partners in the partnership the right to buy out the third partner by giving him written notice of their intent to do so. Paragraphs 19(e) and 19(f) provide for the valuation of the withdrawing partner's interest and for the payment for that interest by the remaining partners.Paragraph 19(e) provides that the value of a partner's interest shall be equal to the sum of the following items: (1) The credit balance in the partner's capital account using book value for each asset. Accounts receivable shall be decreased by a 2 percent reserve for bad debts, and liabilities and contingent liabilities shall be based on the principal balance due or claimed to be due; (2) The amount of any debt owed to the partner by the partnership; (3) The partner's proportionate share of the partnership's net profit for the current fiscal year to the date on which the computation is made and not yet reflected in the partner's capital account; or if the partnership operations for that period show a loss, the partner's proportionate share of any such loss shall be deducted; and (4) Less any debt owed by the partner to the partnership.
*302 Petitioner was a partner in the partnership during the entire taxable year of 1977. In February of 1978, Larry Rogers informed petitioner that he and his father were exercising their right under paragraph 19(c) of the partnership agreement to purchase his interest in the partnership under the terms specified in paragraphs 19(e) and (f) of the agreement. Petitioner was told that he would be entitled to draw a salary for the remainder of that month, but that his services and duties were to cease immediately. Larry Rogers provided petitioner with letters from the partnership's attorney and accountant detailing the terms of the acquisition of his interest and valuing his interest in the partnership. Petitioner was informed that his share of the partnership's income for 1977 was $32,137. Eventually petitioner received two Schedules K-1 for 1977; the first for the period beginning January 1, 1977 and ending August 31, 1977; and the second beginning September 1, 1977 and ending December 31, 1977. On both forms the words "tentative K-1" were written in the upper right-hand corner. [2] Petitioner never received any other Schedule K-1 from the partnership. *303 Petitioner filed his income tax returns for 1977 on October 19, 1978. On that return he reported his distributive share of partnership income from Oxnard Drywall Supply in the amount of $32,505.36. The partnership information return for 1977 filed for Oxnard in February of 1979 reported petitioner's share of ordinary income to be $49,058.00. In December of 1978, petitioner signed a "Mutual Release Agreement" with his ex-partners. Petitioner was told that the agreement would release him from any continuing joint and several liability. Petitioner was thereafter unable to get any further information regarding the partnership finances or his proper share of the partnership income and losses for the taxable year of 1977. Respondent contends that petitioner is liable for income tax on his one-third distributive share of 1977 partnership income in the amount of $48,485 as set forth in the partnership return (as adjusted by respondent). Respondent also included in petitioner's income the $12,000 petitioner received in 1977 as a guaranteed payment. [3]
Petitioner's position is that the termination of his interest in the partnership, *304 coupled with the accounting given him by the Rogers showing his share of partnership income for 1977 to be $32,505.36 and his inability to get any financial information other than the "tentative" Schedule K-1 forms from the remaining two partners, constituted a modification of the partnership agreement. Thus, he argues that he correctly reported his distributive share of partnership income in the amount of $31,838 ($32,505.36 less $666.66 additional first year depreciation). In support of his position petitioner relies on Smith v. Commissioner,T.C. Memo. 1962-294, affd. 331 F.2d 298 (7th Cir. 1964). Section 701 provides that each partner, and not the partnership, is liable for income tax. Each partner must take into account separately his distributive share of the partnership's income. Section 702(a). In general, a partner's distributive share of income and losses is determined by the partnership agreement. Section 704(a). Each partner is taxed on his distributive share of the partnership income without regard to whether the amount is actually distributed *305 to him. Sec. 1.702-1(a), Income Tax Regs. Thus, to the extent that the partnership had income in 1977, petitioner is liable for his distributive share of that income whether or not he received it. United States v. Basye,410 U.S. 441, 453 (1973). The partnership agreement includes oral or written modifications. Section 761(c) and sec. 1.761-1(c), Income Tax Regs.Section 761(c) provides as follows: (c) Partnership Agreement. - For purposes of this subchapter, a partnership agreement includes any modifications of the partnership agreement made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year (not including extensions) which are agreed to by all the partners, or which are adopted in such other manner as may be provided by the partnership agreement. The burden is on petitioner to prove the existence of any written or oral modification. See Martin v. Commissioner,T.C. Memo. 1982-226. Although petitioner argues that there was a modification *306 of the partnership agreement, he did not present sufficient evidence to meet his burden of proving a modification. There is no evidence that the partners agreed to, or even discussed modifying the partnership agreement. This case is distinguishable from Smith v. Commissioner,supra, wherein the record established the existence of an oral agreement that, in effect, modified the original partnership agreement. Accordingly, respondent's determination is sustained. [4]
II. Addition to Tax under Section 6651(a)(1).
Petitioner filed his 1977 Federal income tax return on October 19, 1978. Petitioner was granted a extension of time (until June 15, 1978) to file his return. A second request for extension was mailed on June 20, 1978, by petitioner's accountant. The second request for an extension was untimely and was not granted. Section 6651(a)(1) provides for an addition to tax in the case of a failure to file a return "* * * unless it is shown *307 that such failure is due to reasonable cause and not due to willful neglect * * *." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs., provides that if a taxpayer exercises ordinary business care and prudence and is still unable to file the return within the statutory period, then the delay is due to reasonable cause. The burden of proof is on petitioner to establish the existence of reasonable cause. Estate of Direzza v. Commissioner,78 T.C. 19, 32 (1982). Petitioner argues that the traumatic expulsion from the partnership coupled with reliance upon professional advisers constitutes reasonable cause for the delinquent filing. While petitioner was a credible and forthright witness, the record is inadequate to sustain petitioner's burden of proof on this issue. We have no doubt that petitioner suffered some upset in his expulsion from the partnership. However, this expulsion occurred in February of 1978. Petitioner provided no further details to establish that he was under some emotional or other disability after that date. With respect to petitioner's argument that he relied upon professional advisers, once again he provided few facts to adequately prove such *308 reliance. Also, petitioner's testimony was vague as to when he received sufficient information to prepare the return. Petitioner stated that he received the Schedule K-1 forms "several months" after February 15, 1978. We cannot conclude on this record that there was a delay in receiving this information which prevented petitioner from filing his return before the due date as extended. [5] Accordingly, respondent is sustained on this issue. Petitioner agreed that the remainder of the adjustments set forth in the statutory notice were correct and accordingly a decision may be entered for the full amount of the deficiency and addition to tax. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. In the record there was a copy of the Oxnard Drywall Supply Form 1065 with the Schedules K-1 for each of three individuals who were partners in 1977. The Schedule K-1 for petitioner has an entry under item 1(b) "Ordinary Income" of $49,058. None of the forms have a date on them. However, the parties stipulated in paragraph 4 of the stipulation of facts that these forms were filed with the Audit Division of the Internal Revenue Service on February 3, 1979.↩
3. Petitioner does not contest this adjustment.↩
4. While we sympathize with petitioner's plight we are clearly bound by the provisions of the Internal Revenue Code.↩
5. It is probable that had petitioner requested an additional extension prior to June 15, 1978, because of his inability to get the required information, such request would have been granted. Or petitioner could have timely filed the return he filed late and amended it later if necessary.↩