**William YOUNG; Ruby Young,**
**Petitioners–Appellants,**

v.

**COMMISSIONER INTERNAL**
**REVENUE SERVICE,**
**Respondent–Appellee.**

No. 89–70384.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1990.

Decided Jan. 16, 1991.

Edward B. Simpson, Simpson & Gigounas, San Francisco, Cal., for petitioners-appellants.

Shirley D. Peterson, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before HUG, BEEZER and BRUNETTI, Circuit Judges.

HUG, Circuit Judge:

Appellants William and Ruby Young ("taxpayers") appeal the Tax Court order disallowing the allocation of 75% of the tax losses of Riverfront Associates, Ltd. ("Riverfront"), to one partner, Spokane Hotel Associates, Ltd. ("Spokane") on grounds that the allocation lacked economic substance. On appeal, taxpayers contend it was clear error for the Tax Court to find that the allocation lacked economic substance. We affirm.

## BACKGROUND

We highlight the following key facts and terms of the Riverfront partnership agreement. Taxpayers became limited partners in Spokane. Spokane, in turn, became a limited partner in Riverfront by contributing $500,000 in capital/cash. Riverfront was formed for the purpose of constructing, owning and operating a hotel in Spokane, Washington. On the admission of Spokane as a limited partner, Riverfront's partnership agreement was amended to reflect the following:

1.  Spokane was to receive 75% of the profits and losses of Riverfront for the years 1974 and 1975.[1] The parties agree Riverfront was certain to lose money in these years and Spokane actually negotiated to receive the allocation of tax losses. (*See* RT II, p. 145).

2.  In all years subsequent to 1975, Spokane received 10% of the profits and losses of Riverfront.

3.  Prior to any distribution of Riverfront's net cash flow, Spokane was to receive 25% of Riverfront's operating profits as a partial return of its capital contribution.

4.  Until its capital contribution was repaid, Spokane was entitled to 100% of all proceeds from the sale or refinancing of Riverfront property.

5.  Upon dissolution of Riverfront, Spokane was entitled to a return of its capital contribution prior to any distribution of assets to the remaining partners. After return of its capital, Spokane would receive 10% of the remaining assets.

6.  The partnership agreement did not require any partner to make up a deficit balance in their capital account.

The Tax Court found that the allocation of 75% of Riverfront's losses to Spokane lacked economic substance. The Tax Court determined that Spokane really held a 10% equity position in Riverfront. Therefore, Spokane was only entitled to 10% of Riverfront's tax losses.

## DISCUSSION

■ We review the Tax Court's determination of whether a transaction lacks economic substance for clear error. *Thompson v. Com'r of Internal Revenue*, 631 F.2d 642, 646 (9th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). The clear error standard applies even when the Tax Court's findings are predicated upon inferences drawn from documents and undisputed facts. *Id.*

■ Internal Revenue Code (I.R.C.) § 704(a) allows partners to determine their distributive share of income, gain, loss, deduction or credits. The partners' allocation will be given effect unless it lacks economic

---

1.  1975 is the only tax year in issue on appeal.

substance.[2] *Boynton v. Com'r of Internal Revenue*, 649 F.2d 1168, 1173 (5th Cir. 1981), *cert. denied*, 454 U.S. 1146, 102 S.Ct. 1009, 71 L.Ed.2d 299 (1982); *Goldfine v. Commissioner*, 80 T.C. 843, 850 (1983). To have economic substance, an allocation must accurately reflect the basis on which the partners agreed to share economic profits and losses. *Boynton*, 649 F.2d at 1174; *Goldfine*, 80 T.C. at 850.

■ To determine whether an allocation has economic substance, courts often apply a capital accounts analysis. *Allison v. United States*, 701 F.2d 933, 939 (Fed.Cir. 1983); *Orrisch v. Commissioner*, 55 T.C. 395, 403–04 (1970), *aff'd per curiam*, 31 A.F.T.R.2d 1069 (9th Cir.1973) (unreported); *Goldfine*, 80 T.C. at 852. Under a capital accounts analysis, the partners must reflect the allocation in their respective capital accounts and distribute liquidation proceeds in proportion to the capital account balances. Further, upon liquidation, if a partner has a negative balance in the partner's capital account, the partner must restore the deficit. *Allison*, 701 F.2d at 939; *Goldfine*, 80 T.C. at 852.

■ In the present case, the Tax Court applied the capital accounts analysis and found that the allocation of 75% of the tax losses to Spokane lacked economic substance. Riverfront capital accounts reflected the 75% tax loss allocation to Spokane. However, the provisions of the partnership agreement operated independently of the capital accounts and ensured Spokane a return of its investment. Liquidation proceeds were not distributed in proportion to capital account balances and partners were not required to restore deficit capital account balances upon dissolution. On this basis, the Tax Court concluded that the allocation lacked economic substance. *Young v. Commissioner*, 54 T.C.M. (CCH) 119, 121 (1987).

Taxpayers make two arguments supporting their contention that the Tax Court clearly erred in determining that the allocation lacked economic substance. First, taxpayers argue the Tax Court erred by not marking the partnership capital account balances to market. Second, taxpayers argue the Tax Court erred by not focusing on the business purpose of the tax allocation.

### 1. Marking Partnership Capital Account Balances to Market

■ Taxpayers contend partnership capital accounts must be marked to fair market value in determining economic substance of partnership allocations. Taxpayers cite no authority for this position. In fact, taxpayers concede that courts have not previously done this. We can find no authority supporting this position, and as the Tax Court recognized, such a position is contrary to taxation principles, which do not recognize unrealized gains and losses. The Tax Court was correct in not marking the capital accounts to market.

Even if the capital accounts were marked to market, the allocation would fail the capital accounts analysis. In the event of dissolution of Riverfront, liquidation proceeds would be distributed independent of the capital account balances. Spokane is entitled to a return of its capital and 10% of the remaining proceeds regardless of whether their capital account is positive or negative. Spokane would not bear the economic burden of the tax loss allocation even if the capital accounts were marked to market.

### 2. Business Purpose Test

■ Taxpayers also contend that the appropriate test of economic substance for a

---

**2.** We note that Internal Revenue Code § 704(b)(2) limits partnership allocations where the principal purpose of the allocation is the avoidance or evasion of tax. Prior to 1976, it was not clear whether section 704(b)(2) applied to "bottom line" allocations. *See Boynton v. Com'r of Internal Revenue*, 649 F.2d 1168, 1172. In 1976, section 704(b) was amended to specifically include "bottom line" allocations. The section was also amended expressly to incorporate the economic substance requirement. For purposes of this appeal, the Commissioner concedes section 704(b)(2) does not apply. (RT II, p. 27). However, the economic substance analysis for "bottom line" allocations prior to 1976 is substantially the same as the analysis under the 1976 amended version of I.R.C. § 704(b). *See Boynton*, 649 F.2d at 1173 n. 13; *Goldfine v. Commissioner*, 80 T.C. 843, 855 (1983).

pre–1976 allocation where I.R.C. § 704(b)(2) does not apply is one of business purpose. Taxpayers argue that if Riverfront did not receive the cash investment from Spokane, the hotel project would fail. Therefore, the negotiation of the tax loss allocation had the valid business purpose of maintaining the existence of the hotel project.

Taxpayers' argument lacks merit. The Fifth Circuit rejected a similar argument in *Boynton.* In *Boynton,* Boynton and Plimpton formed a partnership to operate a citrus grove. ˙Boynton began contributing more capital to the partnership than Plimpton. The partners amended the partnership agreement to distribute all the federal tax losses of the partnership to Boynton so long as his capital contribution was greater than Plimpton's. The taxpayers argued that the continued existence of the partnership was economic justification for the loss allocation. The court rejected this argument. The court concluded that because the partnership's overall distribution of profits and losses remained unchanged by the loss provision, the provision lacked economic substance. *Boynton,* 649 F.2d at 1174; *see also Kresser v. Commissioner,* 54 T.C. 1621, 1630–31 (1970) (where the Tax Court disallowed a "bottom line" tax loss allocation provision because the allocation did not accurately reflect the economic basis upon which the partners agreed to share profits and losses.)

As in *Boynton,* the present case involves a "bottom line" loss allocation provision in which I.R.C. § 704(b)(2) concededly does not apply. Taxpayers' right to receive profits, losses and cash flow distributions from the partnership remain unchanged by the loss allocation provision. On this basis, the allocation does not have economic substance.

Even if we focused on the business purpose of the loss allocation, the provision does not have economic substance. Bargaining for tax benefits does not establish a business purpose. *Goldfine,* 80 T.C. at 854. Establishing economic substance under a business purpose test requires business motivations apart from tax considerations. *See Allison,* 701 F.2d at 937–38;

*Goldfine,* 80 T.C. at 854. These considerations are not present in this case.

AFFIRMED.