*Decision will be entered under Rule 50.*

KURT H. deCOUSSER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21385. Promulgated January 17, 1951.

*M. B. Decker, Esq.*, for the petitioner.
*Thomas V. Lefevre, Esq.*, for the respondent.

## OPINION.

Hill, *Judge:* The primary question is whether the respondent correctly determined that petitioner's distributive share of the income of the partnership involved for the years 1942, 1943, and 1944 was in the amounts set forth above. The petitioner argues that the existence of a controversy between him and Barber during those years rendered the amount of his distributive share indefinite and impossible of ascertainment and that such amounts were not specifically established until the settlement agreement of April 26, 1944. With respect to his contention, petitioner states on brief as follows:

\* \* \* They [petitioner and Barber] were to be equal partners in the profits but there was no definite understanding as to the amount Mr. Barber was to receive for management nor was there anything definite in respect to the capital contributions. \* \* \*

He also states that:

\* \* \* The agreement of August 10, 1938 was so vague and indefinite in respect to management and other fees to be paid to Mr. Barber, capital contributions and in many other respects, that it was impossible to determine the distributive share of the profits of Petitioner from said agreement, \* \* \*.

Petitioner thus maintains that the amounts of the cash paid to him under the settlement agreement, together with cash previously distributed to him, should be related back to the years in question in accordance with the formula set forth in our findings. We do not agree with his contention.

With respect to taxation of members of a partnership, section 182 of Internal Revenue Code provides:

SEC. 182. TAX OF PARTNERS.

In computing the net income of each partner, he shall include, whether or not distribution is made to him—

\* \* \* \* \* \* \*

(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183 (b).

Hence, in accordance with the statute, each partner is taxable upon his distributive share of the partnership profits whether received by him or not. See *Bourne* v. *Commissioner*, 62 Fed. (2d) 648.

Final determination of the basic issue, then, turns upon the answer to the question—In what percentage, if any, of the net profits of the partnership in question did petitioner have a right to share during the years in question? There is no dispute as to the amounts of the partnership net income for each of the years before us. They were stipulated by the parties as set forth in our findings. We think, moreover, that there can be little doubt that petitioner had a right in accordance with the partnership agreement of August 10, 1938, to a 50 per cent share of the partnership profits at least in the years 1942 and 1943. It is true that there was certain vagueness concerning financing and "some small items of expense" in the agreement and that during the existence of the partnership petitioner and Barber had several disagreements from which arose certain alterations to the original agreement. So far as the facts show, however, none of these ever resulted in an amendment to the provision of the agreement that petitioner and Barber were to share in partnership profits on a 50-50 basis.

Those disputes are outlined in detail in our findings. It will be noted that there were several disagreements prior to 1942 which resulted in some modifications of the agreement. One change resulted from a dispute which arose late in 1938 or early 1939 concerning Barber's request of petitioner that the latter loan the partnership $50,000 for working capital. Petitioner could not do so. As a result of this it was agreed that petitioner would not participate in future wells unless he contributed to the cost of drilling them. Another modification came about in 1940 as a result of a dispute concerning sharing expenses of drilling three wells which proved to be dry holes. An agreement was reached concerning this and the expense of drilling those wells was completely absorbed prior to 1942.

The only dispute concerning partnership income and the partners' share thereof which affected petitioner's income for the years in question resulted from Barber's 1943 accounting to petitioner. In it Barber not only revised downward petitioner's income for 1941, but also made some adjustments for 1942. Barber's statement for 1942 showed a partnership profit of $35,501.22, after depletion, and also a deduction of $5,000 for management fees from petitioner's share of $17,750.61, which reduced his share to $12,750.61. Petitioner then brought suit on October 18, 1943, asking for his 50 per cent share of the partnership profits, and an accounting and dissolution of the partnership. In his bill of complaint, petitioner alleged that he was entitled to a total of $15,426.12 and $27,913.18 in profits for the years 1941 and 1942, respectively. Certainly those facts show that there was no agreement between the partners to change the provision that they were to share in partnership profits on an equal basis.

Moreover, with respect to 1942 respondent has not attempted to tax petitioner on an amount of petitioner's distributive share of profits of the partnership greater than the $12,750.61 which Barber, in his accounting, stated was petitioner's share; indeed, the respondent has determined that his income due to partnership activity in 1942 was $12,582.65, which is less than the amount Barber originally said that he was entitled to receive. The respondent determined this lower figure after readjusting the allowance for depletion. In short, the respondent in computing petitioner's profits for 1942 has reduced it by all the deductions in controversy. If petitioner's theory in the lawsuit against Barber was proper his distributive share was higher than the amount respondent determined. We believe that in the circumstances of this case and in the light of section 182 of the Code that respondent's determination with respect to 1942 is proper and we so hold.

As to 1943, there appearing to be no specific items in controversy and since as of the end of that year it appeared from all the facts then known that petitioner had a right to share in 50 per cent of the partnership profits, we hold that respondent's determination that his distributive share for that year was $15,739.80 also should be sustained.

Our conclusion in this respect is supported by, among others, *First Mechanics Bank* v. *Commissioner*, 91 Fed. (2d) 275. In that case the Court found that one Bird entered into a joint venture in 1916 with a Canadian company for the purpose of fulfilling certain contracts. Under the agreement Bird was to receive profits of 15 per cent from some contracts and 5 per cent from others. Deliveries under one of the contracts were completed in 1916. Under another, manufacture was completed in 1917, but while awaiting shipment the products were destroyed by fire or explosions at Kingsland, New Jersey.

In 1916 Bird wrote the Canadian company demanding an accounting for his profits and also threatened court action. Bird brought suit in 1919. The issue involved the contract completed and under which delivery had been made in 1916. Bird was entitled to some $312,000 as the result of this contract in 1916. However, he compromised with the Canadian company in 1928 after protracted litigation for $200,-000. The taxpayer claimed he should have reported $312,000 in 1916, while the Commissioner argued that he was taxable on $200,000 in 1928. The Court said as follows with respect to the question:

In the present case the contracts were completed in 1916. The profits were realized by the joint venture at that time and there was nothing conditional or contingent about their receipt. They were earned and paid. Bird, therefore, was legally entitled to his share of the profits which was $312,723.46, and was taxable on that share although he did not actually receive it in that year. That he saw fit to compromise the amount due him for $200,000 in 1928 did not

diminish his liability for taxes for 1916. Appeal of Fred Truempy, supra, [1 B. T. A. 349] ; Appeal of Robert A. Faesy, supra, [1 B. T. A. 350].

See also *D. H. Byrd*, 32 B. T. A. 568.

With respect to the year 1944, however, it may be argued that petitioner's ratio of his distributive share of the partnership profits was changed by virtue of the settlement agreement of April 16, 1944, between him and Barber. If that were true, it would follow that he would not have been entitled to 50 per cent of the partnership profits for 1944. We do not believe, however, that petitioner has shown that that ratio was changed by the settlement agreement. By it petitioner received $17,026.33 in cash and seven producing wells. But in his formula for determining his share of partnership profits petitioner considered only the cash distributed to him. He claims that the value of the wells was not includible in his taxable income for any of the years in question because distribution of assets upon dissolution of a partnership is not a taxable event, citing *Annie Laurie Crawford, et al., Executors*, 39 B. T. A. 521, and *Robert W. Wilmot*, 44 B. T. A. 1155. We do not agree with his argument. Concerning the cases cited we said in *James F. Curtis*, 3 T. C. 648, 662:

* * * The *Crawford* and *Wilmot* decisions most assuredly do not suggest that partners may postpone the imposition of tax on partnership profits by the simple expedient of distributing such profits in the form of property other than cash. Hence, they do not assist petitioner in avoiding tax on his portion of the gains arising from the joint transactions.

Here the primary purpose of petitioner's lawsuit was to claim one-half of the profits of the venture between him and Barber. So far as the facts show the settlement determined that question.[2] At least it has not been shown that the wells distributed to petitioner on the settlement date were anything else than a distribution of part of his share of the profits for the years 1942, 1943, and 1944. It is thus apparent that petitioner should have included not only the amount of the cash in his computation of income for the years in question, but also any value of the wells distributed to him. And since petitioner has not proved the value of such wells, or that it was less than an amount, when added to the cash, equal to 50 per cent of the partnership profits for 1944, we can not say that the respondent's determination with respect to that year is erroneous. We therefore hold that respondent's determination was also proper as to 1944.

In view of the above it is not necessary to discuss issue (2).

*Decision will be entered under Rule 50.*

---

[2] In the petition, petitioner states as follows concerning the settlement: * * * In May of 1944, your petitioner and the said Leslie T. Barber adjusted by agreement between themselves the distributive shares of the profits from said partnership venture * * * whereby petitioner accepted $17,026.33 of said impounded funds, and seven of the producing wells, and Leslie T. Barber accepted $18,648.01 of the impounded funds and five producing wells. * * *