T.C. Memo. 2005-297

UNITED STATES TAX COURT

TIMOTHY J. BURKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14904-04.                    Filed December 27, 2005.

<u>Timothy J. Burke</u>, pro se.

<u>Michael R. Fiore</u>, for respondent.


MEMORANDUM OPINION

WELLS, <u>Judge</u>:  This matter is before the Court on
respondent's motion for summary judgment pursuant to Rule 121 and
petitioner's cross-motion for partial summary judgment.  The
issues[1] for decision are:  (1) Whether petitioner is required to

---

[1] Petitioner moves for partial summary judgment with respect
to the first issue.

report his distributive share of partnership income for the 1998 taxable year despite the fact that his distributive share of that income was not actually distributed to him but is being held in escrow because of a dispute with his former partner; (2) whether respondent correctly calculated that distributive share; and (3) whether petitioner is entitled to deduct certain business expenses. After considering respondent's motion and petitioner's response, we conclude that there remain no issues of material fact that require trial. For the reasons stated below, we will grant respondent's motion for summary judgment and deny petitioner's motion for partial summary judgment. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code, as amended.

## Background

At the time of filing the petition, petitioner resided in West Roxbury, Massachusetts.

Petitioner is an attorney, admitted to practice in Massachusetts and before the United States Tax Court, and a certified public accountant. On October 13, 1993, petitioner formed a partnership (the partnership) with Jeffrey Cohen, named "Cohen & Burke", to practice law and prepare tax returns. Shortly after formation, the partnership purchased a tax preparation practice owned by the estate of Mr. Cohen's father.

The partnership agreement provided that, from October 13 through December 31, 1993, each partner would be entitled to 100 percent of the income attributable to business that partner generated. The partners agreed that, beginning January 1, 1994, each partner who originated new business would receive an origination fee of 10 percent of the billing from that business. The remainder of the profits and losses was to be split equally.

Disagreement arose between petitioner and Mr. Cohen shortly after formation of the partnership. During December 1995, the partnership agreement was terminated. As a result of representations made by Mr. Cohen during January 1996, the parties agreed to conduct the partnership under a new oral agreement (the new agreement). Pursuant to the new agreement, the partnership's income was allocated as follows: (1) A guaranteed payment of 10 percent of the gross profits from the tax return preparation business would be paid to the originating partner; (2) 100 percent of the gross profits from legal services attributable to each originating partner was allocated to that partner; (3) the remaining net profits were allocated equally to each partner; and (4) with respect to work referred from one partner to the other, a referral fee of 33 percent of gross profits from the referred work would be paid to the referring partner. The new agreement was effective from January 1, 1996, through December 31, 1998. Petitioner prepared and filed the

partnership returns (including schedules) for the 1996 and 1997 taxable years and allocated the partnership's income in accordance with the new agreement.

During early 1998, Mr. Cohen began stating that he had never agreed to the new agreement.  Mr. Cohen's statements caused a dispute which resulted in a deadlock:  petitioner and Mr. Cohen agreed to pay expenses but could not agree on distributions.  On September 18, 1998, Mr. Cohen's attorney sent petitioner a letter suggesting that petitioner and Mr. Cohen should not remove or dissipate any of the partnership's assets, except as required in the normal course of business.

During 1998, it became clear that Mr. Cohen and petitioner could not resolve their disputes without litigation.  No later than November 1998, money received by the partnership was stolen by Mr. Cohen, who opened a legal practice that was in direct competition with Cohen & Burke.  Mr. Cohen and petitioner began to place the partnership receipts in an escrow account until the dispute could be resolved.

Mr. Cohen prepared Form 1065, U.S. Partnership Return of Income (including schedules), for the 1998 taxable year reporting $242,000 in ordinary income, and, on October 14, 1999, filed the Form 1065 with the Andover, Massachusetts, Internal Revenue Service Center.  The Schedules K-1, Partner's Share of Income, Credit, Deductions, etc., issued to petitioner and Mr. Cohen

reported each partner's distributive share as $121,000. On October 20, 1999, petitioner filed his Form 1040, U.S. Individual Income Tax Return, for the 1998 taxable year reporting zero as his distributive share of partnership income and filed, along with his Form 1040, a notice of inconsistent determination stating that the Form 1065 was replete with factual and legal inaccuracies.

On October 4, 1999, petitioner filed suit against Mr. Cohen in the Massachusetts Superior Court requesting damages for breach of fiduciary duty, breach of contract, deceit, and conversion and requesting an accounting. Mr. Cohen and petitioner agreed to keep the partnership receipts in escrow. At the time the lawsuit was filed, petitioner did not know the sum of the stolen deposits. During the course of the State court litigation, petitioner learned that Mr. Cohen had not been forthcoming regarding all of the partnership's income. Petitioner prepared an analysis of the partnership income for the 1998 taxable year and determined, on the basis of the new agreement and the information available to him, that he was entitled to approximately $151,000.[2] Mr. Cohen's position in the lawsuit was

---

[2] Petitioner had previously analyzed the partnership's income, but that analysis lacked information regarding the deposits stolen by Mr. Cohen. The second analysis largely uses the same information regarding the partnership's income for 1998 but also includes certain deposits received by petitioner and not deposited in the partnership account and some of the deposits

(continued...)

that the partners were entitled to only 50 percent of the partnership's profits each and were not entitled to any amounts based on the new agreement. On October 16, 2002, the jury found for petitioner "with regard to the partnership between January 1, 1996 through December 31, 1998"; i.e., the income of the partnership should be allocated according to the new agreement. Although petitioner received a favorable jury verdict, as of the time of the submission of the parties' moving papers in the instant case, the partnership receipts remained in escrow pending the Massachusetts Superior Court's decision on petitioner's motion for an accounting.

Respondent determined a $41,338 deficiency based on the $121,000 reported to petitioner on his Schedule K-1 and mailed petitioner a notice of deficiency on May 14, 2004. Petitioner timely petitioned this Court. After petitioner provided respondent an income analysis of the partnership's income for 1998 during discovery, respondent increased the deficiency to $53,077. Using the income analysis petitioner provided, respondent determined petitioner's distributive share under the new agreement was $151,682.

---

[2](...continued)
stolen by Mr. Cohen. Respondent deducted the stolen deposits from the calculation of the increased deficiency.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in a light most favorable to the nonmoving party. Craig v. Commissioner, 119 T.C. 252, 260 (2002); Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). The party opposing summary judgment must set forth specific facts which show that a genuine question of material fact exists and may not rely merely on allegations or denials in the pleadings. Grant Creek Water Works, Ltd. v. Commissioner, 91 T.C. 322, 325 (1988); Casanova Co. v. Commissioner, 87 T.C. 214, 217 (1986).

1. Whether Petitioner Must Include in His Distributive Share of Partnership Income for the 1998 Taxable Year Amounts That Are in Dispute Between the Former Partners

Section 701 provides: "A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities." In determining his income tax, each partner must separately include his

distributive share of the partnership's taxable income or loss. Sec. 702(a)(8). As a general rule, a partner's distributive share of income, gain, loss, deduction, or credit is determined by the partnership agreement. Sec. 704(a).

Section 1.702-1(a), Income Tax Regs., provides: "Each partner is required to take into account separately in his return his distributive share, whether or not distributed, of each class or item of partnership income". (Emphasis added.) "Few principles of partnership taxation are more firmly established than that no matter the reason for nondistribution each partner must pay taxes on his distributive share." United States v. Basye, 410 U.S. 441, 454 (1973). "The tax is thus imposed upon the partner's proportionate share of the net income of the partnership, and the fact that it may not be currently distributable, whether by agreement of the parties or operation of law, is not material." Heiner v. Mellon, 304 U.S. 271, 281 (1938); see also First Mechs. Bank v. Commissioner, 91 F.2d 275, 279 (3d Cir. 1937) (holding that a partner's share of partnership income was taxable to him for the year in which the income was realized by the partnership even though not distributed to the partner in that year); Chama v. Commissioner, T.C. Memo. 2001-253 (holding that a partner was taxable on his share of partnership gain even though not distributed to him but instead reinvested by the partnership); Johnston v. Commissioner, T.C. Memo. 1984-374

(holding that each partner is taxed on his distributive share of partnership income without regard to whether the amount is actually distributed to him).

Petitioner argues, however, that the existence of a real controversy between petitioner and Mr. Cohen rendered the amount of his distributive share indefinite and that the partnership receipts in escrow are "frozen" and therefore unavailable to petitioner. Petitioner cites section 703(a) for the proposition that the taxable income of a partnership is computed in the same manner as that of an individual and cites several cases to support his argument that his dispute with his former partner postpones the inclusion of his distributive share because he does not have a claim of right to the income. Petitioner chiefly relies on: North American Oil Consolidated v. Burnet, 286 U.S. 417 (1932) (taxpayer must include income to which he has a claim of right); Estate of Fairbanks v. Commissioner, 3 T.C. 260 (1944) (dispute between executors and decedent's wife precluded inclusion in the estate's income); Madigan v. Commissioner, 43 B.T.A. 549 (1941) (taxpayer who placed funds in his personal account pending outcome of an accounting was not required to include the entire amount in income); Preston v. Commissioner, 35 B.T.A. 312 (1937) (dispute between two attorneys, who were not partners, precluded inclusion in income). Petitioner's reliance on the foregoing cases is misplaced for reasons discussed below.

Petitioner acknowledges that none of the cases he cites involves a partnership. Instead he argues that, because partnership taxable income is computed in the same manner as that of an individual, the existence of a partnership does not matter. Petitioner argues that the combination of section 703(a) and the cited cases leads to the conclusion that a taxpayer does not have income if there are restrictions on its receipt.

We disagree with petitioner's argument for several reasons, the first of which is that the cases petitioner cites do not involve partnerships or partners' distributive shares. Cohen & Burke was a partnership, and, therefore, the cases petitioner cites do not apply.

Secondly, section 703 describes how partnership income is computed;[3] i.e., how taxable income is calculated from gross

---

[3] SEC. 703(a). Income and Deductions.--The taxable income of a partnership shall be computed in the same manner as in the case of an individual except that--

    (1) the items described in section 702(a) shall be separately stated, and

    (2) the following deductions shall not be allowed to the partnership:

        (A) the deductions for personal exemptions provided in section 151,

        (B) the deduction for taxes provided in section 164(a) with respect to taxes, described in section 901, paid or accrued to foreign countries and to possessions of the United States,

(continued...)

income.[4]  A partnership itself pays no taxes, sec. 701, but the income of the partnership must be reported, and that income is calculated generally in the same manner as an individual computes his personal income, United States v. Basye, supra at 448.  In Basye, the Supreme Court stated:

> For this purpose then, the partnership is regarded as an independently recognizable entity apart from the aggregate of its partners.  Once its income is ascertained and reported, its existence may be disregarded since each partner must pay tax on a portion of the total income as if the partnership were merely an agent or conduit through which the income passed.

The issue here is not whether the partnership itself was entitled to income.  Instead, the issue is whether petitioner was required to report for 1998 his distributive share of income that was already earned by the partnership during that year.  The income was earned by the partnership during 1998, and there was nothing conditional or contingent about its receipt.  Petitioner,

---

[3](...continued)

>> (C) the deduction for charitable contributions provided in section 170,

>> (D) the net operating loss deduction provided in section 172,

>> (E) the additional itemized deductions for individuals provided in part VII of subchapter B (section 211 and following), and

>> (F) the deduction for depletion under section 611 with respect to oil and gas wells.

[4] See sec. 63(a) (defining taxable income as "gross income minus the deductions allowed by this chapter").

therefore, was taxable on his distributive share of the partnership's profits for 1998, even though he did not receive it. See First Mechs. Bank v. Commissioner, 91 F.2d at 279. It is irrelevant that petitioner still may not know the full extent of the partnership income because of the deposits stolen by his partner, Mr. Cohen; the nonappearance of the deposits on the partnership books is not determinative. See Stoumen v. Commissioner, 208 F.2d 903, 908 (3d Cir. 1953) (holding that the taxpayer's distributive share of partnership income was taxable to him in the year of realization by the partnership, despite the fact that his partner had embezzled funds which did not appear in the partnership books, and despite the fact that the taxpayer was unaware of the existence of the funds and never received any of them), affg. a Memorandum Opinion of this Court.[5]

Thirdly, a partner is taxable on his distributive share of partnership income when realized by the partnership despite a dispute among the partners as to their respective distributive shares. In De Cousser v. Commissioner, 16 T.C. 65 (1951), the taxpayer argued that a controversy with his partner rendered the amounts of his distributive share indefinite and impossible to determine and that those amounts were not specifically

---

[5] We recognize that this is a harsh rule, but the harshness is mitigated somewhat by the theft loss deduction allowed under sec. 165(e), which, in pertinent part, provides: "any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss."

established until a settlement was reached during the last of the 3 years in issue.  Id. at 71.  We rejected the taxpayer's argument that taxation of his distributive share should be postponed on that account, and we noted that the purpose of his suit against his partner was to claim one-half of the profits and that the settlement seemed to have decided that question.  Id. at 74.  We held that the taxpayer's distributive share of the partnership profits had to be included in his income for the years in which those profits were earned by the partnership. Id.; see also First Mechs. Bank v. Commissioner, supra at 279 (holding the taxpayer liable for the higher amount of his distributive share for the tax year in issue despite the fact that the taxpayer had settled for a lesser amount in a later year in order to end protracted litigation); Beck Chem. Equip. Corp. v. Commissioner, 27 T.C. 840, 855 (1957) (holding that the principles of scienter and actual receipt have no application to the issue of whether partners are to be charged with their distributive shares and rejecting the taxpayer's argument that a dispute with his partner made the calculation of his distributive share impossible and that the amounts were not established until a settlement was reached in a later year); Klein v. Commissioner, 25 T.C. 1045 (1956) (rejecting the taxpayer's argument that a dispute between the taxpayer and his partner over his

distributive share delayed inclusion until a later year when the funds were actually received).

On the basis of the foregoing, we conclude that petitioner is taxable on his distributive share of partnership income for 1998 which includes the amounts in dispute between petitioner and his former partner even though undistributed to petitioner. Accordingly, respondent is entitled to summary judgment on the issue of whether petitioner must include the disputed amounts in his distributive share of partnership income for the 1998 taxable year, and petitioner's motion for partial summary judgment will be denied.

2. Whether Respondent Properly Calculated Petitioner's Distributive Share

Under Rule 142(a)(1), respondent bears the burden of proving an increased deficiency. Respondent's determination is based on petitioner's income analysis of the 1998 taxable year and the Massachusetts State court jury's finding in petitioner's favor.

Petitioner acknowledges that he prepared his income analysis and that the jury found in his favor that the partners' distributive shares should be allocated according to the new agreement. In his response to respondent's motion for summary judgment, however, petitioner does not state that respondent incorrectly calculated his distributive share on the basis of the income analysis and the new agreement, nor does his affidavit create a genuine issue of fact in that regard. Instead,

petitioner argues:  "The partnership received deposits.  To have income the tests established by the Courts, the Internal Revenue Code and the regulations must be met.  As is detailed in Petitioner's memorandum those tests were not met."

Petitioner's burden on summary judgment is to set forth specific facts which show that a genuine question of material fact exists.  See Grant Creek Water Works, Ltd. v. Commissioner, 91 T.C. at 325; Casanova Co. v. Commissioner, 87 T.C. at 217.  Petitioner does not dispute the facts pertinent to the calculation of his distributive share of the partnership's income for the year in issue.  Rather, petitioner argues that the deposits to the partnership's account for that year are not income to him as a matter of law.  As we discussed above, a partner must include his distributive share of partnership income whether or not it is distributed to him.  Accordingly, we conclude that respondent is entitled to summary judgment on the issue of the calculation of petitioner's distributive share.

3. Whether Petitioner May Deduct Certain Business Expenses

Deductions are a matter of legislative grace.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  The taxpayer bears the burden of proving he is entitled to deductions and must present adequate documentation to support any deductions claimed.  Welch v. Helvering, 290 U.S. 111, 115 (1933); see also Nowland v. Commissioner, 244 F.2d 450, 453 (4th Cir. 1957) (holding the

taxpayer bears the "burden of proving the amount of deductible expenses since deductions are a matter of statutory privilege and must be shown by substantial evidence"), affg. T.C. Memo. 1956-72.

Viewing the factual inferences in the light most favorable to the nonmoving party, as we must on a motion for summary judgment, we do not find that a genuine issue of material fact exists as to the business expense deductions. See Craig v. Commissioner, 119 T.C. at 260; Dahlstrom v. Commissioner, 85 T.C. at 821; Jacklin v. Commissioner, 79 T.C. at 344. Petitioner claims $1,799 in additional trade or business expense deductions that he did not include on his 1998 individual tax return. In response to respondent's motion for summary judgment, petitioner merely asserts that he is entitled to the deductions as trade or business expenses and states that he has provided respondent with evidence of those expenses.[6] The party opposing summary judgment must set forth specific facts which show that a genuine question of material fact exists and may not rely merely on allegations or denials in the pleadings. Grant Creek Water Works, Ltd. v. Commissioner, supra at 325; Casanova Co. v. Commissioner, supra

---

[6] Petitioner claims that copies of certain checks in respondent's files substantiate these expenses. As respondent points out, these checks total $3,790.29, and petitioner is claiming only $1,799 as deductible trade or business expenses. Moreover, these checks are not self-explanatory as to the nature of the expenses claimed.

at 217.  Petitioner has failed to meet his burden to come forward with specific facts showing a genuine issue of material fact exists.  Petitioner has not provided adequate substantiation of the expenses or provided any explanation or description of his entitlement to deduct the expenses.  Accordingly, respondent is entitled to summary judgment.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.