T.C. Memo. 2010-112

UNITED STATES TAX COURT

ELIZABETH E. JONES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17874-08.                    Filed May 20, 2010.

Frederick N. Widen, for petitioner.

Anita A. Gill, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:  This case is before the Court on a petition

for redetermination of a deficiency and an accuracy-related

penalty under section 6662(a)[1] that respondent determined for

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.  Amounts
                                              (continued...)

2005.  The issues for decision are:  (1) Whether petitioner's former husband's distributive share of the income of two pass-through entities is includable in their joint income for the year at issue, (2) whether petitioner is entitled to relief from joint and several liability pursuant to section 6015 if her former husband's distributive share of income is includable in their joint income, and (3) whether petitioner is liable for the accuracy-related penalty imposed under the provisions of section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference.  At the time she filed her petition, petitioner resided in Ohio.

Personal Background

Petitioner received an undergraduate degree in political science from Ohio University and a master's degree in education and higher education administration.  Petitioner took courses in accounting and economics while in college.  Petitioner worked as a sales representative for Abbott Laboratories, Inc., for 12.5 years, but was no longer employed there at the time of trial. After moving to Nevada in 2000, petitioner married David Jones

_____

[1](...continued)
are rounded to the nearest dollar.

(Mr. Jones) in 2001 and they had a daughter. Mr. Jones was employed as a pilot with Net Jets from 1999 until November 2006, when he was terminated because of a drinking problem.

Mr. Jones is a 45-percent shareholder of Hadley & Pech, Inc. (Hadley & Pech), an aviation management company that is an S corporation, and a 50-percent owner of Archipelago Aviation, LLC (Archipelago), a limited liability company that charters aircraft and is taxed as a partnership. Roger Sutton (Mr. Sutton), who was a friend of Mr. Jones', owns the remaining 55 percent of Hadley & Pech and 50 percent of Archipelago. Neither entity has a written operating agreement.

Before 2006 petitioner relied on Mr. Jones to handle their household finances and to secure and submit necessary tax paperwork. Mr. Jones likewise was responsible for the financial and tax aspects of Hadley & Pech and Archipelago. However, Mr. Jones became addicted to alcohol and other substances that interfered with his responsibilities to his family and his businesses. Mr. Jones entered rehabilitation programs at the beginning of 2005 and again in September 2005. Around the time of Mr. Jones' rehabilitation in September 2005, his business partner, Mr. Sutton, seized all the records and computers of Hadley & Pech and Archipelago and took them from Nevada to Oregon, assuming full control over the financial and tax aspects of the entities.

Upon completion of rehabilitation, Mr. Jones resumed handling his family's finances until October of 2006, when his alcohol addiction required petitioner to take over. Responsibility for filing the couple's 2005 return, which was due on October 15, 2006, fell to petitioner. Petitioner was aware that Hadley & Pech and Archipelago were in operation and that Mr. Jones was an owner, and she immediately contacted Mr. Sutton to obtain the 2005 Schedules K-1, Partner's [or Shareholder's] Share of Income, Deductions, Credits, etc., but he did not send them. Petitioner subsequently visited a return preparer and filed the couple's 2005 joint income tax return on October 15, 2006. Petitioner did not report any income from Hadley & Pech or Archipelago on the 2005 return.

For 2005 Hadley & Pech and Archipelago had $101,927 and $212,298 of ordinary net business income, respectively. Mr. Jones' shares of that income, as Mr. Sutton eventually reported to the Internal Revenue Service (IRS) on the Schedules K-1, were $45,867 and $106,149, respectively. Hadley & Pech's cash distributions for 2005 consisted of $115,000 to Mr. Sutton and $10,000 to Mr. Jones, while Archipelago did not make any distributions for 2005. During 2005 petitioner was aware of the cash distribution of $10,000 from Hadley & Pech, which was used to pay their 2004 income tax liability.

Mr. Jones' alcohol addiction led to the couple's separation on January 21, 2007. Petitioner moved back to Ohio in January of 2007 and was granted a power of attorney over Mr. Jones' financial matters. Throughout 2007 petitioner made numerous attempts to obtain the 2005 Schedules K-1 from Mr. Sutton, ultimately receiving them in August 2007.

On February 20, 2008, Mr. Jones and petitioner filed a complaint in Nevada against Mr. Sutton, Hadley & Pech, and Archipelago, alleging breach of contract and fraud. The suit was dismissed on June 10, 2008, as to defendants Mr. Sutton and Archipelago because of lack of personal jurisdiction, and as to Hadley & Pech because the court declined to exercise jurisdiction on the basis of the doctrine of forum non conveniens.

On April 21, 2008, respondent issued a notice of deficiency to petitioner and Mr. Jones. In the notice of deficiency respondent determined there were omissions from income for 2005 of $152,016 and thus a deficiency of $55,171 in joint income tax and an accuracy-related penalty under section 6662(a) of $11,034. The deficiency figure is based almost entirely on Mr. Jones' unreported income from Hadley & Pech and Archipelago of $45,867 and $106,149, respectively. Petitioner timely filed a petition on July 21, 2008, in which she sought a redetermination of the tax deficiency and penalty and raised a claim under section 6015 as an affirmative defense. Mr. Jones did not join in the

petition and failed to respond to a notice of filing of petition and right to intervene.

Petitioner and Mr. Jones entered into a voluntary separation agreement on March 20, 2009. The separation agreement did not address Mr. Jones' obligation to pay any outstanding income tax liabilities for 2005 but stated that for 2007 petitioner and Mr. Jones would select the tax method generating the least tax liability for both and share the payment of tax equally for 2007. Petitioner filed Form 8857, Request for Innocent Spouse Relief, on March 17, 2009. A decree of dissolution of marriage was entered on May 12, 2009.

OPINION

I.   Liability for Taxes on Income From Pass-Through Entities

Section 61(a) defines gross income as "all income from whatever source derived". Hadley & Pech, an S corporation, and Archipelago, a partnership, are pass-through entities. The income from these entities is taxable to Mr. Jones, as a shareholder in one and a partner in the other, to the extent of his proportionate interests in the entities, irrespective of whether he received the income. See secs. 702(a), 1366(a).

For 2005 Hadley & Pech reported $101,927 in income, 45 percent, or $45,867, of which was attributed to Mr. Jones under section 1366(a)(1). Although Mr. Jones received only a $10,000 cash distribution from Hadley & Pech in 2005, as a shareholder he

was required to recognize his 45-percent share of the S corporation's income even though it was not distributed.  See Knott v. Commissioner, T.C. Memo. 1991-352.

Citing Girgis v. Commissioner, T.C. Memo. 1987-556, affd. in part, revd. in part on another ground and remanded without published opinion 888 F.2d 1386 (4th Cir. 1989), petitioner claims that, in light of Mr. Jones' comparatively small $10,000 cash distribution, the $115,000 distribution to Mr. Sutton was improper.  Petitioner asserts that because the cash distributions to Mr. Jones and Mr. Sutton were not made in the same percentages as their ownership interests, Hadley & Pech should treat Mr. Sutton's cash distribution as a deductible loss for the year.

In Girgis, a partner embezzled receipts from the partnership, and the innocent partner was able to establish not only that the receipts were embezzled but the exact amount of the embezzlement.  The Court allowed the partnership to reduce its income by the amount of the embezzled receipts, producing a partnership loss, which passed through to the innocent partner to the extent of his pro rata share.  In the instant case, petitioner provided no evidence to establish that the $115,000 distribution made by Hadley & Pech to Mr. Sutton during 2005 was impermissible, much less that the disbursement rose to the level of embezzlement.

Petitioner further claims that the 2005 Schedule K-1 she later received from Hadley & Pech is inaccurate. Thus, she claims section 6037(c) permits her to report on her joint return amounts different from those that Hadley & Pech reported on her Schedule K-1. Petitioner's reliance on section 6037(c) to challenge the Schedule K-1 is misplaced. That section requires a shareholder of an S corporation to treat subchapter S items in a manner consistent with the treatment of the items on the corporate return or to file with the Secretary a statement identifying any inconsistency. Sec. 6037(c)(1) and (2)(A)(ii). Petitioner failed to file any such statement or otherwise notify the Secretary of the inconsistent treatment. Thus, petitioner failed to comply with the requirements of section 6037(c).[2]

Archipelago is an LLC that is taxed as a partnership. For 2005, Archipelago reported ordinary net business income of $212,298 on its partnership return but did not make a

---

[2]If a shareholder of an S corporation fails duly to notify the IRS of an inconsistency between her own return and that of the corporation in a situation described in sec. 6037(c)(2)(A)(i)(I) where, at the time the shareholder files her return, the corporation has already filed a return, the IRS may use the procedures for mathematical or clerical errors to adjust the shareholder's pass-through items to be consistent with their treatment on the corporation's return. Sec. 6037(c)(3). In this case, Hadley & Pech had not filed its return at the time petitioner filed her joint return. While the statute still contemplates that petitioner must notify the Secretary that her return is inconsistent with Hadley & Pech's, the effect of a failure to notify described in sec. 6037(c)(3) does not apply in this situation, nor does it affect our jurisdiction.

distribution to Mr. Sutton or Mr. Jones during 2005.  As a 50-percent partner, Mr. Jones is required to recognize and report $106,149, his share of the partnership income even though it was not distributed to the partners.  <u>United States v. Basye</u>, 410 U.S. 441, 447-449 (1973); <u>Burke v. Commissioner</u>, T.C. Memo. 2005-297, affd. 485 F.3d 171 (1st Cir. 2007); sec. 1.702-1, Income Tax Regs.

Petitioner contends that Mr. Sutton crafted an agreement with Archipelago whereby all of Archipelago's income for 2005 would be allocated solely to Mr. Sutton, and she requests that we respect that agreement.  However, petitioner did not offer into evidence any such agreement between Mr. Sutton and the partnership and admits there was no written operating agreement with respect to the partnership.  Section 704(b) provides, as does section 1.704-1(b)(1)(i), Income Tax Regs., that if a partnership makes no allocation as to a partner's distributive share of income or loss, or if the agreements provides for allocations that do not have substantial economic effect, then the partner's distributive share shall be determined in accordance with the partner's interest in the partnership. Because Mr. Sutton and Mr. Jones did not have a partnership agreement providing allocations of their respective distributive shares, Mr. Jones is responsible for reporting income attributable to his 50-percent partnership interest.

Petitioner again asserts, with respect to Archipelago, that she and Mr. Jones should not be required to pay the tax with respect to this entity because during 2006 Mr. Sutton purportedly caused Archipelago to "pay either to himself or one of his entities substantially all of the cash of Archipelago Aviation, LLC." Even though the year at issue in this case is 2005, petitioner asserts that during 2006 Mr. Sutton wrongfully received all of Archipelago's cash. However, petitioner provided no evidence that any of Archipelago's funds were wrongfully paid to Mr. Sutton or to another of Mr. Sutton's entities. Moreover, even if petitioner had established that funds were wrongfully withdrawn from Archipelago during 2006, this would not affect the income petitioner and Mr. Jones were obligated to report on their 2005 joint Form 1040, U.S. Individual Income Tax Return.[3]

## II. Innocent Spouse Treatment

Generally, when a husband and wife file a joint Federal income tax return, they are jointly and severally liable for the full amount of the tax. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). However, a spouse may qualify for

---

[3]A taxpayer is entitled to deduct losses arising from the theft of property under sec. 165(a). Any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers the loss. Sec. 165(e). Petitioner testified that she discovered during 2007 that Mr. Sutton had taken the profits. Thus, even if petitioner established embezzlement of funds, that loss would not be claimed for 2005. See Marine v. Commissioner, 92 T.C. 958 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991).

relief from joint and several liability under section 6015(b), (c), or (f) if various requirements are met. Petitioner contends she qualifies for full relief from joint liability under section 6015(b) and (c), and if not, that she is entitled to equitable relief under section 6015(f).

A. Relief From Joint and Several Liability Under Section 6015(b)

Section 6015(b)(1) authorizes the Commissioner to grant relief from joint and several liability for tax (including interest, penalties, and other amounts) if the taxpayer requesting relief satisfies each of the following five requirements of subparagraphs (A) through (E):

(A) A joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election * * *

The requesting spouse bears the burden of proving that she satisfies each of these five requirements.  See Rule 142(a); Jonson v. Commissioner, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).  If the requesting spouse fails to meet any one of the five requirements, she fails to qualify for relief.  Alt v. Commissioner, 119 T.C. 306, 313 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

Respondent does not dispute that petitioner satisfies two elements of section 6015(b)(1); namely, those regarding the filing of a joint return and timely election under section 6015(b)(1)(A) and (E), respectively.  Thus, we consider only whether petitioner satisfies the remaining three elements of section 6015(b)(1).

### 1.  Section 6015(b)(1)(B)

The first element, in section 6015(b)(1)(B), is an understatement of tax attributable to erroneous items of the other person filing the joint return.  The parties agree that the understatements of income tax arose from the failure to include income from Hadley & Pech and Archipelago.  Respondent contends that the investments in the partnerships are attributable to both spouses and that petitioner had an interest in the partnerships. Respondent cites the fact that petitioner was listed as a plaintiff along with Mr. Jones in the Nevada suit against Mr. Sutton, Hadley & Pech, and Archipelago.

We are not persuaded that the understatement is attributable to petitioner or that she had an interest in the entities. Petitioner's name on the Nevada complaint is not sufficient to prove that she held such an interest. Moreover, the parties' stipulations show that Mr. Jones is a 45-percent shareholder of Hadley & Pech and a 50-percent owner of Archipelago and that Mr. Sutton owns the remainder of each. Respondent is bound by those stipulations. Thus, we conclude that the unreported income was attributable to entities partially owned by Mr. Jones in which petitioner had no interest, and the tax understatements resulting therefrom were attributable solely to Mr. Jones.

### 2. Section 6015(b)(1)(C)

The second element, in section 6015(b)(1)(C), is the requirement that petitioner establish that in signing the 2005 joint tax return she did not know, and had no reason to know, of the understatement of tax on that return attributable to the omitted income from Hadley & Pech and Archipelago. Respondent claims petitioner knew or had reason to know that there was an understatement on her 2005 joint income tax return.

This Court has defined actual knowledge as "an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof)." Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), affd. 282 F.3d 326 (5th Cir. 2002). The record is clear that

petitioner was aware that Hadley & Pech and Archipelago existed, that they were operating during 2005, and that Mr. Jones was an owner of the entities and received a $10,000 cash distribution from Hadley & Pech during 2005 to pay the taxes owed for 2004. Consequently, we find petitioner had actual knowledge of the $10,000 cash distribution from Hadley & Pech before she signed the joint 2005 Federal income tax return.

We must address the remaining unreported income attributable to Mr. Jones of $35,867 and $106,149 from Hadley & Pech and Archipelago, respectively. Where, as here, a taxpayer on notice that her spouse had unreported income does not know the exact amount of income, she must fulfill a duty of inquiry or risk being charged with constructive knowledge of the understatement of tax on the return. Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Demirjian v. Commissioner, T.C. Memo. 2004-22.

Responsibility for filing the 2005 joint income tax return fell to petitioner only after Mr. Jones entered rehabilitation shortly before the return was due. Petitioner credibly testified regarding her extensive efforts, both before and after filing the return, to obtain the Schedules K-1 for Hadley & Pech and Archipelago from Mr. Sutton. We find petitioner acted as a reasonable person would in such circumstances and properly met her duty of inquiry. Thus, petitioner did not have actual or

constructive knowledge of the remaining $35,867 of unreported income from Hadley & Pech or the $106,149 from Archipelago.

3.  Section 6015(b)(1)(D)

Finally, we consider 6015(b)(1)(D), which requires us to evaluate all the facts and circumstances and determine whether it would be inequitable to hold petitioner liable for the deficiencies in tax attributable Mr. Jones.  The factors we consider in determining inequity for purposes of section 6015(b)(1)(D) are the same factors that we consider in determining inequity for purposes of section 6015(f).  Alt v. Commissioner, supra at 316; Juell v. Commissioner, T.C. Memo. 2007-219.[4]

Several factors weigh in petitioner's favor.  First, she and Mr. Jones are no longer married or residing together.  Second, petitioner was not actively involved in Hadley & Pech or Archipelago and had no knowledge or reason to know of the unreported income beyond Hadley & Pech's $10,000 cash distribution.  Third, petitioner is in compliance with the filing

---

[4]Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. 296, 297, lists seven threshold conditions which must be satisfied before we consider a request for relief under sec. 6015(f), and Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298, lists several factors that we consider in determining whether to grant equitable relief under sec. 6015(f).  Respondent concedes that petitioner meets six of the seven threshold conditions.  However, in our holding above we concluded that the tax liability at issue is attributable solely to Mr. Jones.  Thus we find petitioner meets the seven threshold conditions.

of her tax returns for years after 2005.  On the other hand, petitioner benefited from the omission of the income from the couple's joint return.  Moreover, petitioner failed to show that she would experience economic hardship by paying the taxes owed or that Mr. Jones has a legal obligation pursuant to the separation agreement or divorce decree to pay the total outstanding income tax liabilities for 2005.

In balancing the factors, we find those in favor of relief outweigh those that count against it.  On the basis of the above, we find petitioner has carried her burden of proving that it would be inequitable to hold her liable for the deficiency in tax attributable to the unreported income from Archipelago and Hadley & Pech of which she had no actual or constructive knowledge.

4.  Section 6015(b)(2)

Section 6015(b)(2) provides that if an electing spouse satisfies all requirements of section 6015(b)(1) other than those of section 6015(b)(1)(C), then relief from joint and several liability for tax may be granted to the extent such liability is attributable to "the portion of such understatement [of tax] of which such individual did not know and had no reason to know." In accordance with our findings above, petitioner otherwise satisfied the requirements of section 6015(b)(1) and under section 6015(b)(2) is thus relieved of liability for the deficiency in tax and the penalty for 2005 arising from the

omission of income from Hadley & Pech and Archipelago, except for the portion of the tax deficiency and the penalty attributable to the $10,000 cash distribution from Hadley & Pech of which she had actual knowledge.

B.    Relief From Joint and Several Liability Under Section 6015(c) and (f)

Petitioner further claims eligibility for relief under section 6015(c) and, alternatively, section 6015(f).  Under section 6015(c), if the requesting spouse is no longer married to, or is legally separated from, the spouse with whom she filed the joint return, the requesting spouse may elect to limit her liability for a deficiency.  An election under section 6015(c) is invalid, however, if the Secretary demonstrates that the requesting spouse had actual knowledge, when signing the return, of any item giving rise to a deficiency that is otherwise allocable to the nonrequesting spouse.  Sec. 6015(c)(3)(C).  We found above that petitioner was entitled to relief under section 6015(b) from tax attributable to all unreported income of which she had no actual or constructive knowledge, and from the penalty associated therewith.  Thus, we find it unnecessary to discuss section 6015(c) because the relief, if any, available to her under that section would be no greater than we allow her under section 6015(b).

Petitioner claims that to the extent she fails to qualify for relief under section 6015(b) or (c), she is entitled to

equitable relief under section 6015(f). Relief from joint and several liability is available under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for any unpaid tax or deficiency and she does not qualify for relief under section 6015(b) or (c). We previously considered the equitable factors found in section 6015(f) in our finding under section 6015(b)(1)(D) that petitioner was entitled to relief under section 6015(b) for the portion of the understatement of which she had no actual knowledge. However, because of petitioner's actual knowledge of the $10,000 cash received from Hadley & Pech for which we have not granted relief, those equitable factors do not weigh in her favor. Thus, further discussion of section 6015(f) is unwarranted, as it would yield no additional relief for petitioner.

III. Section 6662(a) Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20-percent accuracy-related penalty on the portion of any underpayment of taxes that is attributable to negligence or disregard of rules and regulations, or a substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). The Commissioner bears the burden of production with respect to penalties. Sec. 7491(c); Higbee v.

Commissioner, 116 T.C. 438, 446-447 (2001).  Once the burden of production is met, the taxpayer must come forward with evidence sufficient to show that the penalty does not apply.  Higbee v. Commissioner, supra at 447.

Petitioner's understatement of tax is $55,171.  The understatement exceeds the greater of 10 percent of the tax required to be shown or $5,000.  Thus, the understatement is substantial for purposes of section 6662(d)(1)(A), and respondent has met his burden of production.

Petitioner argues that she made a reasonable attempt to comply with the income tax laws and did not disregard rules and regulations.  Under section 6664(c)(1), an accuracy-related penalty is not imposed on any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. The taxpayer bears the burden of proof with regard to those issues.  Higbee v. Commissioner, supra at 446.  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances, including the extent of the taxpayer's efforts to assess his or her proper tax liability, and the taxpayer's education, knowledge, and experience.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The extent of the taxpayer's efforts to assess the proper tax liability is generally the most important factor.  Id.

Petitioner testified that neither she nor Mr. Jones received the 2005 Schedules K-1 from Mr. Sutton informing them of Mr. Jones' distributive share of the income of the entities until August 2007, well after the October 15, 2006, date of filing. However, "the failure to receive tax documents does not excuse taxpayers from the duty to report income." Du Poux v. Commissioner, T.C. Memo. 1994-448. Petitioner was unsure whether she had informed the preparer of the 2005 return that the Schedules K-1 were missing, and she made no disclosure on the joint return of the missing documents that might reduce her penalty. Moreover, petitioner failed to notify the IRS of her inconsistent treatment under section 6037(c). Petitioner had actual knowledge that Hadley & Pech and Archipelago were operational, that Mr. Jones was an owner of each, and that he had received a $10,000 cash distribution from Hadley & Pech during 2005. Thus, petitioner has failed to carry her burden of proving good faith and reasonable cause and is responsible for the portion of the penalty attributable to the $10,000 cash distribution of which she had actual knowledge.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.