T.C. Memo. 2016-63

UNITED STATES TAX COURT

NIK LAMAS-RICHIE AND SHAYNE LAMAS-RICHIE, Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25662-14.                          Filed April 11, 2016.

Nik Lamas-Richie and Shayne Lamas-Richie, pro sese.

<u>Sebastian Voth</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  With respect to petitioners' Federal income tax for 2011, the Internal Revenue Service (IRS or respondent) determined a tax deficiency of $7,097 and an accuracy-related penalty of $1,419 under section 6662(a).[1]  After

_____

[1]Unless otherwise indicated, all statutory references are to the Internal

(continued...)

[*2] concessions,[2] the principal issue for decision is whether petitioners are taxable on petitioner husband's distributive share of partnership income that was not actually distributed to him during 2011. We answer this question "yes" but hold that petitioners are not liable for the penalty with respect to this item.

FINDINGS OF FACT

The parties submitted before trial a partial stipulation of settled issues and a stipulation of facts. We incorporate the stipulation of settled issues, the stipulation of facts, and the related exhibits by this reference. Petitioners resided in California when they timely filed their petition.

Nik Lamas-Richie (petitioner) previously lived in Scottsdale, Arizona, and did credit card processing for the financial industry. Finding life as a "cubicle warrior" intellectually unsatisfying, and cognizant of the success of reality TV, he wondered whether "reality Internet" could be his ticket to success. In early 2007 he started a gossip blog on a Web site with a uniform resource locator (URL) of

---

[1](...continued)
Revenue Code (Code), as amended and in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[2]Petitioners concede that respondent properly adjusted their taxable income for 2011 to include unemployment compensation of $300, interest of $13, and additional wages of $9.

**[*3]** "thedirtyscottsdale.com." This Web site initially posted gossip about local topics, including "the cool kids in Scottsdale who thought they were celebrities." He later branched out by posting gossip of possible regional and national interest.

As the Web site gained more viewers, it attracted the attention of investors. An investor named James Grdina approached petitioner and suggested the formation of a partnership that would take over the Web site and supply capital to help it expand. The partnership was called "Dirty World LLC" (Dirty World), and it began operations in September 2007. Mr. Grdina provided capital by causing Intrigue Investment Co. (Intrigue) to lend the partnership $650,000. Mr. Grdina and Intrigue together owned a 59% interest in the partnership; petitioner received a 41% limited partnership interest.

To reflect the venture's intended breadth of scope, the URL for the Web site was changed to "thedirty.com." Petitioner operated the Web site much as he had before, essentially functioning as an editor. People would upload gossip to the site for posting, and petitioner would filter out material he deemed salacious or otherwise unfit for publication. He would often append amusing notations to the gossip he published. Not infrequently, Dirty World was sued by the people who were the subject of this gossip, and petitioner spent a fair amount of time dealing with these lawsuits.

**[*4]** Petitioner entered into an employment contract with iNetwork Group, LLC, another venture owned by Mr. Grdina, to compensate him for his services in editing the gossip and managing the blog. This contract was apparently oral. For 2011 iNetwork furnished petitioner a Form W-2, Wage and Tax Statement, reporting that it had paid him wages of $74,500 for that year.

Petitioners timely filed a Federal income tax return for 2011 on April 14, 2012. This return was prepared by a professional and competent tax return preparer in Mission Viejo, California. The return reported petitioner's wages of $74,500 from iNetwork and separately reported on Schedule C, Profit or Loss From Business, sole proprietorship income of $46,036 from Lamas Richie Productions, LLC. The return did not include a Schedule E, Supplemental Income and Loss, and it did not otherwise report any income or loss stemming from petitioner's 41% limited partnership interest in Dirty World.

On September 17, 2012, Dirty World filed a return on Form 1065, U.S. Return of Partnership Income. This return was prepared by an accounting firm and signed by Mr. Grdina. On line 22 the return reported for calendar year 2011 ordinary business income of $61,992 from operation of the Web site. This income consisted chiefly of advertising revenue.

**[\*5]** The Form 1065 included a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., for petitioner. This Schedule K-1 reported that petitioner's distributive share of Dirty World's ordinary business income for 2011 was $25,417 (41% × $61,992). Petitioner did not receive a copy of this Schedule K-1 and was not aware of the contents of Dirty World's Form 1065 until the IRS began its examination of his 2011 return. Petitioner credibly testified that Dirty World had never previously reported any net profit. The Schedule K-1 for 2011 shows no distributions to him.

Apparently because of litigation concerns, petitioner during 2013 relinquished his 41% partnership interest in Dirty World. (The record does not reveal how this transaction was consummated.) He nevertheless continued to serve as editor of the Web site, evidently as a salaried employee of iNetwork. Petitioner testified that the gossip blog continues to thrive, with operations now in 365 markets worldwide and 24 million unique visitors to the Web site monthly.

OPINION

I.    Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). For the presumption of correctness to attach with respect to unreported income,

[*6] the Commissioner must establish a "minimal evidentiary showing" connecting the taxpayer with the income-producing activity. See Blohm v. Commissioner, 994 F.2d 1542, 1548-1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636; Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), rev'g 67 T.C. 672 (1977). Respondent met this evidentiary threshold by establishing that petitioner held a 41% limited partnership interest in Dirty World and that Dirty World reported ordinary business income of $61,992 for 2011. The burden of proof thus shifts to petitioners to prove by a preponderance of the evidence that respondent's determination is incorrect. See Helvering v. Taylor, 293 U.S. 507, 515 (1935); Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986). Petitioners do not contend, and the evidence does not establish, that the burden of proof shifts to respondent as to any issue of fact. See sec. 7491(a)(1).

II.     Partnership Income

Partnerships are not subject to Federal income tax. Sec. 701. After items of income and expense are determined at the partnership level, "[e]ach partner is required to take into account separately in his return his distributive share, whether or not distributed, of each class or item of partnership income, gain, loss, deduction, or credit." Sec. 1.702-1(a), Income Tax Regs. A partner's distributive share of each item is generally determined by the partnership agreement. Sec.

[*7] 704(a); Renkemeyer, Campbell & Weaver, LLP v. Commissioner, 136 T.C. 137, 143 (2011).

It was established long ago that "a partner must report his distributive share whether received or not." Bourne v. Commissioner, 62 F.2d 648, 649 (4th Cir. 1933), aff'g 23 B.T.A. 1288 (1931); see Jones v. Commissioner, T.C. Memo. 2010-112, 99 T.C.M. (CCH) 1457, 1458; Burke v. Commissioner, T.C. Memo. 2005-297, 90 T.C.M. (CCH) 635, 637, aff'd, 485 F.3d 171 (1st Cir. 2007); sec. 1.702-1(a), Income Tax Regs. A partner must report his distributive share of partnership income even if he was not aware that such income existed at the time it was earned. Stoumen v. Commissioner, 208 F.2d 903, 905-906 (3d Cir. 1953) aff'g 12 T.C.M. (CCH) 267; see Pridgen v. Commissioner, T.C. Memo. 1999-188, 77 T.C.M. (CCH) 2117, 2127-2131, aff'd, 2 F. App'x 264 (4th Cir. 2001); Brooks v. Commissioner, T.C. Memo. 1995-400, 70 T.C.M. (CCH) 458 460.

Petitioner conceded at trial that he held a 41% limited partnership interest in Dirty World during 2011, and his Schedule K-1 shows 41% as his distributive share of the partnership's profits. Dirty World filed a Form 1065 reporting for 2011 ordinary business income of $61,992. This return was signed by Mr. Grdina, who was effectively the controlling partner, and petitioner has provided no reason to believe that this figure was incorrect. Petitioner must report his 41% distribu-

[*8] tive share of Dirty World's profits, or $25,417, even though no distributions were made to him during 2011. See Chama v. Commissioner, T.C. Memo. 2001-253, 82 T.C.M. (CCH) 642, 643; Johnston v. Commissioner, T.C. Memo. 1984-374, 48 T.C.M. (CCH) 553, 554-555 (holding that each partner is taxed on his distributive share of partnership income without regard to whether the amount is actually distributed to him).

Dirty World did not file its Form 1065 for 2011 until September 2012, six months after petitioners filed their individual return. The partnership's failure to supply petitioners with a timely Schedule K-1, however, does not relieve them of their obligation to include in income petitioner's distributive share of the par-tnership's profits. As noted earlier, "[a] partner is taxable on her distributive share of partnership income regardless of whether she receives it or is even aware of its existence." Brooks, 70 T.C.M. (CCH) at 460; cf. Healey v. Commissioner, T.C. Memo. 1996-260, 71 T.C.M. (CCH) 3148, 3149-4 (nonreceipt of Schedule K-1 does not relieve taxpayer of obligation to make reasonable estimate of income on Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return). Although petitioner testified that Dirty World had losses for prior years, he introduced no evidence at trial concerning the magnitude of those losses or the existence of any loss carryforward to 2011. We accordingly have no

**[\*9]** alternative but to sustain respondent's determination that petitioner's distributive share of Dirty World's business income constituted taxable income to petitioners for 2011.

III.     Penalty

The Code imposes a 20% penalty upon the portion of any underpayment of tax that is attributable (among other things) to "[a]ny substantial understatement of income tax."  Sec. 6662(a), (b)(2).  An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return.  Sec. 6662(d)(1)(A).

Under section 7491(c) the Commissioner bears the burden of production with respect to the liability of an individual for any penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  The deficiency that respondent determined, which we have sustained, is $7,097; that amount exceeds $5,000 and 10% of $37,890, the tax required to be shown on petitioners' 2011 return.  Respondent has thus carried his burden of production by demonstrating a "substantial understatement of income tax."  See sec. 7491(c).

The section 6662 penalty does not apply to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith" with respect to it.  Sec. 6664(c)(1).  The taxpayer bears

[*10] the burden of proving reasonable cause and good faith.  Higbee, 116 T.C. at

446447.  The decision whether the taxpayer acted with reasonable cause and in

good faith is made on a case-by-case basis, taking into account all pertinent facts

and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Generally, the most important factor in determining the existence of "rea-

sonable cause" is the taxpayer's effort to ascertain his or her tax liability correctly.

Reasonable cause can be shown by good-faith reliance on the advice of a qualified

tax professional.  Sec. 1.6664-4(b)(1), (c), Income Tax Regs.  To justify such reli-

ance, "[t]he advice must be based upon all pertinent facts and circumstances."  Id.

para. (c)(1)(i).  Other circumstances that may signal reasonable cause and good

faith "include an honest misunderstanding of fact or law that is reasonable in light

of all the facts and circumstances, including the experience, knowledge, and edu-

cation of the taxpayer."  Id. para. (b)(1).

Petitioners do not contend, and the evidence does not establish, that they

had reasonable cause for neglecting to report unemployment compensation of

$300, interest of $13, or additional wages of $9.  See supra note 2.  They challenge

the penalty only with respect to their failure to report petitioner's $25,417

distributive share of Dirty World's business income.  With respect to this item, we

[*11] find that petitioners acted in good faith and made a genuine effort to ascertain their 2011 tax liability correctly.

Petitioner credibly testified that he viewed himself as an employee of Dirty World, and he properly reported the wages of $74,500 that he received through iNetwork for his editorial and related services.  He had not received a Schedule K-1 from Dirty World at the time petitioners filed their 2011 return, and he credibly testified that Dirty World had not previously earned income that he would have been required to report.  Petitioners supplied their return preparer with all tax-related documents relevant to this issue, and we find that they reasonably relied on his assurance that the return in that respect was correct as filed.  See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(b)(1), (c), Income Tax Regs.

To reflect the foregoing,

Decision will be entered under

Rule 155.